**Bruce BARRETT, by Next Friend, Appellants,**

v.

**Michael POSEY, Appellee.**

No. 13421.

Court of Civil Appeals of Texas.

Houston.

Jan. 26, 1961.

Rehearings Denied Feb. 23, 1961.

W. W. Watkins, W. James Kronzer, Houston, Hill, Brown, Kronzer & Abraham, Houston, of counsel, for appellants.

F. Warren Hicks, Houston, Hicks, Dollahon, Boss & Wohlt, Houston, of counsel, for appellee.

WERLEIN, Justice.

This suit was filed by appellant, M. O. Barrett, individually and as next friend for his seven year old son, Bruce Barrett, against Michael Posey, appellee, to recover damages sustained by Bruce, and hospital and medical expenses incurred, when the child was struck by appellee's 1946 Ford coupe about 7:50 a. m. on February 12, 1957, while appellee was driving east in the 1700 block on Turner Drive in the City of Houston.

In response to the Special Issues the jury found that appellee "failed to keep a proper lookout" which was a proximate cause of the event. It was also found that Bruce "failed to keep a proper lookout" and that "immediately prior to the occurrence * * * Bruce Barrett ran from the driveway into the street into the path of the automobile" and this was negligence, and each act of negligence was a proximate cause of the event. The jury found that appellants sustained damages in the sum of $6,833 together with $1,000 for medical bills.

Appellants moved that the findings on Bruce's contributory negligence be disregarded and for judgment in their behalf. This motion was overruled and judgment was rendered for appellee.

In Points One and Two appellants assert the Trial Court erred in failing to disregard the jury's findings that Bruce Barrett was guilty of either act of contributory negligence and in refusing to enter judgment for them, and, alternatively, in refusing to grant their motion for new trial because such findings were so against the great and overwhelming preponderance of the evidence as to be clearly wrong. A discussion of these Points requires a review of the evidence.

Turner Drive is a straight, blacktop street, running east and west. At the point where the accident occurred the paved portion was about 21 feet wide with a gravel pathway on the south side about 2 or 3 feet in width. The Barrett home was located at 1730 Turner Drive on the south side of the street facing north on a lot 75 feet wide. Adjacent on the west was the Thompson home, which was located on a lot of the same width. It too faced north and appears to have been about 40 feet south of the street. Each house had a separate shell driveway on the west side of the lot. This placed the driveways about 75 feet apart. Between the gravel (or shell) shoulder of

the street and the front of the lots there was a ditch about 3 feet deep. The evidence showed there was no means of getting from the Barrett or Thompson houses to the street except by using the driveways, unless one "walked down through the ditches." There were several cedar trees near the east side of the Thompson driveway and also a line of trees near their east line. On the west side there was another tree and some shrubbery though none appears to have been closer to the street than 20 feet.

The investigating officer, P. E. Leak, testified that Posey pointed out the spot where Bruce's body was thrown in the ditch a few feet east of the Barrett driveway. He found no dirt, debris or skid marks on the road. Posey pointed out a spot "two feet north of the south edge of the street" as the place Bruce was struck. It was about 45 feet west of the point where Bruce was thrown and about 60 feet from where Posey said his car stopped. The only damage to appellee's car was to the right front headlight and fender. Several pictures showed that the headlight was pushed back into the fender. Posey told him "he was going east on Turner Drive at approximately 30 miles per hour and the first time he saw the boy he just saw a head over the right front part of his right front fender." The boy "was standing." Posey said, "He was right on top of it. He didn't have time to hit his brakes." The officer testified there was a two-foot gravel shoulder to the side of the paved portion of the highway, but no sidewalks. Mr. Leak stated that the reaction time to get one's foot on the brake with a vehicle moving 30 miles per hour is 46.1 feet. Appellee, so the witness said, offered no excuse for not seeing Bruce although a motorist approaching the scene could see for several blocks. The officer's records showed the car continued straight without swerving to the right or to the left.

Mrs. Delma Barrett, Bruce's mother, was in her house when the accident occurred. Some ten minutes before she had told Bruce and his older brother, John, to ask Mrs. Thompson to take them to school, she having discovered earlier that her car wouldn't start. They had gone next door. She heard the collision but couldn't believe it was her boy. Shocked for a few minutes, she finally went out. Bruce was in the ditch east of their driveway in front of her house. She rode in the ambulance with Bruce to the hospital. After Bruce was in the hospital, she asked John, "How did it happen?" He said, "Mamma, we were coming back from Mrs. Thompson's" and "halfway between Mrs. Thompson's and our driveway he got hit." That is all he ever told her.

Appellee, Michael Posey, called by appellants as an adverse witness, testified he was 19 years old at the time of the collision. On that morning he was driving his 1946 Ford to work as he had been doing for about four months. During that time he "had many times gone up and down Turner Drive at approximately 8 o'clock in the morning." He had observed that children walked up and down that street on the way to school. He had seen that many times and "knew they were there." He knew, too, that there were no sidewalks and they usually walked "along the edge of the street, sometimes on the pavement." He was driving "in the neighborhood of 30 miles per hour." He didn't see Bruce until he was "about a foot" in front of him. Bruce was awful close. Appellee said he was "looking straight ahead" watching "a car up there coming down the road" to meet him "about a half a mile away." Turner Drive is "long, straight and flat at that point" and there were no cars between him and the car he was watching. He was looking straight ahead when "all of a sudden" Bruce appeared in front of him. He "didn't see him dart out there in the street." He didn't tell his lawyer Bruce "darted out in the street from the driveway" nor was he telling the jury that. Posey also testified that the driveways were the only two places along there to get from

the street without crossing and getting down into the ditch.

He said, too, that after his car "had come to a standstill 20 feet still separated Bruce's body from the back end" of his car; that he never sounded his horn; never put on his brakes before he hit Bruce, nor swerved his car. He didn't know how much he would have had to swerve his car to miss Bruce because he "didn't know he was there." He "didn't see him." If he had seen him, he "would have swerved to try to miss him."

He also testified he never told his counsel that "Bruce and John were playing in the Thompsons' driveway"; that he didn't see them playing there; and he didn't know where Bruce was looking. Neither did he see Bruce run from any driveway. He agreed, too, that if Bruce had run from the Thompsons' driveway and from there was knocked beyond his own driveway, he would have knocked Bruce more than 75 feet and he didn't do that. He didn't know "where he [Bruce] came from"; he saw him "just a split second" and then "I hit him." At that time Bruce was on the pavement and the right-hand side of his automobile was about 3 feet from the south edge. Bruce "was right in front of the right front headlight."

Appellee testified he didn't say Bruce was 3 feet from the side of the pavement. It was the right side of his car which was "three feet out on the pavement." He didn't know how Bruce got there. There was "a little dirt pathway on the south side of the street there" and "then there is a ditch beyond that." The shrubbery and trees weren't in the ditch or on the little pathway. He agreed, too, that "if the kid came from the yard or the driveway to a point where he got three feet out on the pavement, he would have had to cross the ditch" and "the little dirt pathway." He also testified that his view of each movement would have been "unobstructed." He "didn't see him traveling that distance." He didn't say "he was out there."

Upon being examined by appellants' counsel concerning the written statement which he made on the day of the accident, he agreed that he had stated when he "had gotten about the middle of the 1700 block" on Turner Drive "there appeared the head of a small boy right above my right front fender." He said he "didn't mean to imply that that kid was crossing right straight across the road." He admitted, too, that he stated, "This boy was standing * * * on the edge * * * of the pavement on the south side of the street" and that he said he could not "give any reasons why I did not see this child until just about the time I struck him."

John Barrett, 12 year old brother of Bruce, who was 11 years old at the time of the accident, testified that on the morning of the accident he and Bruce had gone to Mrs. Thompson's house to ask if she would carry them to school when she took her children. When he went to Mrs. Thompson's door to talk to her Bruce stood on the porch near the driveway. When Mrs. Thompson said her children were not going to school, Bruce jumped off the porch and started running down the driveway toward the street. Bruce was "about at its end" when he [John] started out, about 20 feet ahead of him. John followed, watching Bruce. He saw Bruce turn to his right when he got to "the street," which "put him then traveling back" towards their driveway. At that time, so John testified, he was about 20 feet behind Bruce, who was "on the small pathway awful close to the pavement." He watched Bruce "as he traveled along there in that position" until he was "about twenty feet down the road." John said Bruce was hit after that. When Bruce was struck, John testified he was close to a cedar tree in the Thompsons' yard which was "fairly close to the edge" of the Thompson driveway. While watching Bruce, he ran into some branches of the tree that hung over the edge of the driveway because he didn't notice what he was doing. When he struck them he was blinded for a second. He heard a "loud

thud." That was when the car hit Bruce. He opened his eyes and saw "this small cloud of dust * * * about thirty feet from Mrs. Thompsons' driveway." That was toward their [Barretts'] driveway.

On cross-examination, John stated when Mrs. Thompson said she wouldn't be going to school, he thanked her. Bruce jumped off the porch and started running down the driveway. He was almost at "the end" when he [John] started out. By the time he [John] was "a little ways over halfway out" Bruce had been struck by the automobile. Bruce was about 20 feet ahead when he started. John said he hadn't "gotten out on the road" when Bruce was hit. He said Bruce was on "the small pathway" before he got out there. He estimated that Bruce "was hit about thirty feet east of the [Thompsons'] driveway." John did not think that Bruce got "on the paved portion" though "he wasn't looking." He just "noticed he was there."

John said he wasn't sure he saw the automobile before the collision because he hit "a cedar tree" and shut his eyes for a minute. He was looking at Bruce and didn't look where he was going. He testified Bruce was about 15 feet ahead of him when he [John] ran into the cedar tree. In his deposition he had said, "I don't know. He was quite a ways." He didn't remember seeing the car except just the instant before Bruce was hit. He didn't see it long enough to say how fast it was going. When he was asked if he actually knew whether Bruce was on the paved portion of the street or on the shoulder when he was hit, John replied, "When he started out he was on the shoulder, along the edge, along the pathway" and "he would have no reason to be on the paved portion." When the same question was again asked him, John agreed that on his deposition he had said, "No, I don't. Actually I don't." He also testified he "saw dust fly" about 30 feet from the east side of Mrs. Thompson's driveway.

Mr. Barrett, Bruce's father, testified that the Thompsons' cedar tree was about 30 feet from the street and that the distance between the two driveways was about 75 feet. He also stated that measuring west 45 feet from a point 3 to 5 feet east of his driveway "ought to put you approximately in the center of the Thompsons' yard" and approximately 30 feet east of the Thompsons' driveway.

Appellants offered certain excerpts from Mr. Posey's deposition, wherein he testified he saw Bruce "a split second" before his car struck him. He was "at my right front fender * * * about a foot" away. Also offered from the deposition was the following:

"Q. Now, just having seen him for that short time, could you tell us if he was on the pavement or up on the shoulder? A. I just can't say.

"Q. You just didn't get a good look at him? A. No, sir.

"Q. You don't know where he came from? A. No, sir.

"Q. What had you been looking at, as you came along the roadway, half a block or so before you were in the accident? A. I was watching the car in front of me."

Appellee's witness, Ruben Tamez, testified he was proceeding east on Turner Drive in his car "around a hundred feet" to the rear of Posey's car. He was traveling on the paved portion of the highway 25 or 30 miles an hour and he "usually" tried "to stay over far enough so that I don't hit anything with my tire, around two or three feet." When asked where the car was immediately in front of him, he said, "Well, it seemed to me he was about the same line I was." He didn't see any boys in the street. However he saw an "object come off of that car" in front of him. "It was sort of small and at first I sort of thought it was a dog that had been hit." As he pulled around the car and stopped he

asked appellee what happened. Posey said he hit a boy. After parking his car he came back to where the little boy was lying in the ditch. As he observed the car ahead of him before the accident it continued "in a straight line down the road."

On cross-examination he testified he "didn't see him get hit. * * * I just seen him when he flew back." He said that "from a distance" he had seen these children "playing up there in the yard before the driveway but momentarily I think they [some older boys] were trying to push a car directly across the street and I was watching that there just at the moment * * *." Upon being asked if he saw "these kids playing back up in that driveway," Tamez said, "Well, yes, because that driveway comes out about twenty foot from the shrubbery across that ditch there." When asked if he didn't say he hadn't seen Bruce before he got hit, Tamez replied, "That's right." Though he said a person driving down a street at a distance of 100 feet can see and notice a lot of things on "both sides of the street and in front and on top and in back of you, too" he agreed that he wasn't paying particular attention as to how Posey was operating his car. He testified that he didn't see Bruce "come out into the street"; what he saw was his body flying through the air after he was hit. He said he might have been "a little further" than 100 feet behind Posey's car. He didn't know "where Bruce was struck with reference to the Thompson driveway" and he didn't know at what point Bruce was on the street when he was hit because "from a distance back that far you can't tell."

Appellee offered the deposition of Bruce Barrett, which appellee had taken a few months after the accident. Bruce testified he was seven years old and in the first grade when the accident occurred. He didn't remember it. He said he had been to Mrs. Thompson's that morning but as to where he went after he left or when the accident happened, he didn't know. He didn't remember being hit, going to the hospital, how he went there, the doctor's name who treated him, or how long he stayed in the hospital. Neither did he remember exactly where he was when the accident occurred; whether he was in the street, on the blacktop or not. Nobody was "out there" with him. His brother was coming out of Mrs. Thompson's yard and he [Bruce] was ahead of his brother. He didn't know if the accident was in front of Mrs. Thompson's house. He didn't see the automobile before the accident.

Appellee also offered John Barrett's deposition. While he was standing at Mrs. Thompson's front door saying, "Thank you, anyway," Bruce "took out and started out her driveway * * *. He was almost at the end of it when I started out, but, by the time I was half way out in the yard, Bruce had been struck by the automobile." When asked if he and Bruce got "over on the paved portion of the street," he stated, "I wasn't even at the road when he was hit. I was about at the end of the driveway, out there, he was way ahead of me." When asked, "So he was way out in the street before you got out there?" he replied, "Yes." The next two questions and answers were:

"Q. Did he get on the paved portion? A. I wasn't looking, I just knew where he was there.

"Q. You didn't see him when he was hit? A. I was looking at him— I didn't look at his feet. I just noticed he was there."

John said, "That was about 50 feet" from where Bruce came to rest after the collision. When he was asked if he saw this automobile, he said he had hit a cedar tree and shut his eyes for a minute when it "was about a foot from Bruce." At that time Bruce was ahead of him "quite a ways." He said, too, that he was watching Bruce and ran into the cedar tree and "when it hit me I shut my eyes." Bruce, so he said, was approximately 30 feet from the Thompsons' culvert, going towards his house, when the car came in contact with him. In response to a question as to whether he

knew Bruce was on the paved portion of the street or on the shoulder when he was hit, he answered, "No, I don't. Actually I don't. * * * I kinda closed my eyes a second * * * just as he hit, I heard him go 'thud'."

John also testified in the deposition that Bruce was not in the middle of the street when he got hit. When he was asked if Bruce, as he came down the driveway, didn't stop, but walked out into the street, he replied, "no, sir, he just kinda ran around the corner * * * he turned east." Upon being asked, "What part of the street" was he [Bruce] walking on after leaving Mrs. Thompson's driveway, he said, "Apparently he was on the gravel part, because of the dust and tracks where his heels had dragged when he was hit * * * he was on the south side."

We think it unnecessary to set out the medical testimony. Suffice it to say that Bruce was seriously injured.

■ After carefully reading the statement of facts and viewing the evidence in the light most favorable to appellee, and indulging every legitimate inference in his favor, we have concluded that there is no evidence of probative force in the record that Bruce Barrett ran from the driveway into the street into the path of appellee's automobile. Renfro Drug Co. v. Lewis, 1950, 149 Tex. 507, 235 S.W.2d 609; Gulf, Colorado & Santa Fe Railway Company v. Deen, 1958, 158 Tex. 466, 312 S.W.2d 933.

The undisputed evidence is that Bruce was struck when he was some 30 feet east of the Thompson driveway. This is established by the testimony of appellee as well as that of John Barrett. No one except John saw Bruce leave the driveway. He testified in effect that Bruce turned east on the little pathway beside the road. He didn't know, however, whether Bruce was on the pavement when he was struck.

The more difficult question is whether there is any evidence that Bruce failed to keep a proper lookout. In considering all the testimony in the light most favorable to appellee and indulging in his favor all legitimate inferences, we are hesitant to say that there is no evidence more than a scintilla that Bruce failed to keep a proper lookout. Gulf, Colorado & Santa Fe Railway Company v. Deen, supra.

The evidence shows that when Bruce turned east from the Thompson driveway, he took the little pathway on the south side of the paved portion of the street. Since he was not struck until he had proceeded at least 30 feet in an easterly direction, it is evident that the Posey car, which was traveling 30 miles per hour, or 44 feet per second, was a considerable distance west of Bruce when he started along the pathway. There is some evidence that the Posey car was approximately two or three feet from the edge of the pavement when its right front fender struck Bruce. Assuming that such testimony is true, Bruce must have stepped up onto the pavement at some point between the Thompson driveway and the point of impact, and at such time the Posey car was of course closer than it was at the time Bruce started to walk on the pathway. It is possible that the jury may have inferred from this circumstance that Bruce did not keep a proper lookout on the assumption that if he had done so he would not have gotten on the pavement when he did.

■ On the other hand, Posey admitted that he had stated that the boy was standing on the edge of the pavement on the south side of the street. John Barrett testified that he heard a thud and looked and saw a small cloud of dust about 30 feet from Mrs. Thompson's driveway. From the location of the dust and the tracks on the gravel pathway where Bruce's heels had dragged when he was hit, John testified in his deposition that Bruce was apparently walking on the pathway. No one saw Bruce leave such pathway and step on the pavement. There was nothing to keep appellee from seeing Bruce if he did so. We think it is a matter of common knowledge

that an object moving across or into one's line of vision attracts the eye more readily than one that does not. Tamez's attention was diverted to the north side of the street where some older boys were pushing a car backwards from a driveway into the street. He did not see the child get hit, but saw him flying through the air and into the ditch on the south side of the street. Posey, however, testified he was looking straight ahead at a car half a mile away. If he was, it is difficult to see why he didn't see Bruce who was on the pathway or pavement close to the shoulder.

John testified that he was about 20 feet behind Bruce who was on the pathway awful close to the pavement and that he watched Bruce as he traveled along there about 20 feet. He stated that Bruce had no reason to be on the paved portion of the street. The evidence is undisputed that Bruce was on his way home and as far as the record shows there was no reason for him to leave the pathway.

Bruce could not remember anything about the accident but he did testify that he did not see the car that struck him. In view of his lack of memory, such statement is of little or no probative force. Moreover, if he was walking along the pathway with his back to the car, there was no occasion for him to notice the car. We think this would also be true if he was walking well over on the south side of the pavement since there were no sidewalks and it was customary for children to walk along the pavement as well as the gravel shoulder when going to school.

█ We do not know how far the car was away from Bruce when he got on the pavement, if he did do so. If it was some considerable distance, it is questionable whether he was under any duty to look back for he had the right to assume that he would not be struck by a car coming from his rear when there was no approaching traffic from the east and a fairly wide pavement on which the car could travel without striking him.

It would unduly lengthen this opinion to refer further to the evidence the essence of which is set out hereinabove. It is sufficient to say that we entertain doubt as to whether there is any evidence of probative force that Bruce failed to keep a proper lookout, but in conforming to the rule applicable to a determination of the question we are overruling the point of no evidence as to proper lookout.

█ We are definitely of the opinion, however, upon considering and weighing all of the evidence in the case, both that supporting the verdict and that contrary thereto, that the finding of the jury that Bruce Barrett did not keep a proper lookout is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In re King's Estate, 1951, 150 Tex. 662, 244 S.W.2d 660; Tudor v. Tudor, 1958, 158 Tex. 559, 314 S.W.2d 793.

In view of our holding, it is unnecessary to discuss appellant's other points as they are concerned with alleged errors which probably will not arise upon another trial.

The judgment of the Trial Court is reversed and the cause remanded.

Coleman, J., not sitting.