**Trinidad R. LOPEZ, Appellant,**

v.

**LONE STAR BEER, INC. OF CORPUS CHRISTI, Appellee.**

No. 584.

Court of Civil Appeals of Texas, Corpus Christi.

March 18, 1971.

Rehearing Denied April 15, 1971.

Edwards & DeAnda, William R. Edwards, Corpus Christi, for appellant.

Keys, Russell, Watson & Seaman, M. W. Meredith, Jr., Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is an appeal from a take nothing judgment rendered after a jury trial against Trinidad R. Lopez, plaintiff below and appellant herein, in favor of Lone Star Beer, Inc. of Corpus Christi, defendant below and appellee herein. The parties will be referred to here as they were in the trial court.

Plaintiff sued defendant to recover damages for personal injuries sustained by him on October 14, 1968, when a truck, owned by defendant and operated by its employee, Joe Martinez, backed into him.

In view of both law and factual questions presented in this appeal, a somewhat detailed statement of relevant facts is necessary.

On the day of the injury, plaintiff was working as a construction worker in the repair of a portion of Tarlton Street, in the city limits of the City of Corpus Christi, Texas. At that time he was employed by Asphalt Paving and Construction Company as a cement finisher. Previous to the accident, the City of Corpus Christi had awarded a contract to plaintiff's employer for the rebuilding of that portion of Tarlton Street between Greenwood Avenue on the west and Port Avenue on the east, a distance of 4 or 5 city blocks. The contract provided for the rebuilding of the street itself and the installation of curbs, gutters and sidewalks.

Tarlton Street is 44 feet wide and runs in an east-west direction and is intersected on the west by Greenwood and on the east by Port. It is a two-way street; the south half carries eastbound traffic and the north half carries westbound traffic. There are several other streets in between Greenwood and Port that intersect Tarlton, including MacArthur Street which runs in a north-south direction. Barricades of the "sawhorse" style were in place in the south half of Tarlton at its intersection with Greenwood and also at its intersection with Port. There were no barricades at the entrance to Tarlton from any of the intersecting streets between Greenwood and Port. These barricades did not close Tarlton Street to vehicular traffic nor did they restrict such traffic to any particular part of the street, such as the south or north halves. They simply put the public on notice that street construction work was in progress. There was no marked center line in Tarlton Street on the day of the accident as the roadbed of the street was in rough caliche all the way from Port to Greenwood. The curbs and gutters were almost finished and work was progressing in the construction of sidewalks. That portion of Tarlton then under construction and repair is, for the most part, in a residential area. Sunset Drive-Inn is located on the north side of Tarlton at its intersection with Greenwood. There is a driveway from Sunset Drive-Inn into Tarlton and also a driveway into Greenwood.

On the day of the accident, the weather was clear although rain had fallen two or three days before. Both plaintiff and the driver of defendant's truck were lawfully in the construction area at the time of plaintiff's injury.

Plaintiff was authorized by his employer to use his own personal pickup truck on the job and was reimbursed for expenses incurred. He was using this pickup truck within the scope of his employment at the time of his injury.

Immediately preceding the accident, plaintiff and his crew were building forms for a portion of the sidewalk at a point one or two blocks east of the intersection of Tarl-

ton and Greenwood. Noting that sand was needed, plaintiff and two helpers got into the pickup and drove west on Tarlton to a sandpile that had been stockpiled in a private driveway on the south side of Tarlton at a point 80 to 90 feet east of its intersection with Greenwood and diagonally across the street from the Sunset Drive-Inn driveway. The pickup was loaded with sand and its cargo was delivered to the site where the sidewalk construction was in progress. Plaintiff and his two helpers then returned to the sandpile for another load. He backed his pickup to the south curb of Tarlton with its rear wheels touching the curb and parked perpendicular to the street. His helpers began loading sand from the sandpile. In such parked position, the front of the pickup extended out into the south half of Tarlton. Plaintiff then discovered that his pickup's engine was overheating. He walked over to a vacant lot near the sandpile, picked up a can, walked to the curb, filled the can with water from a low place, went to the front of his pickup, raised the hood, and started pouring water into the radiator of his pickup. At this time, plaintiff was facing south with his back to Sunset Drive-Inn. While he was so engaged in pouring water into the radiator and in such position, he was struck from the rear by defendant's truck which backed into him from its parked position on the Sunset Drive-Inn's driveway. Plaintiff's leg was caught between the rear of defendant's truck and the front bumper of his pickup, was crushed, and was later amputated.

During these same several minutes immediately preceding the accident (which occurred at about 3 o'clock in the afternoon), Joe Martinez, accompanied by his helper, Joe Cantu, both of whom were employees of defendant, drove a truck belonging to defendant into the construction area of Tarlton. The truck driver, Martinez, entered Tarlton from MacArthur Street, which is two or three blocks east of Greenwood. Their purpose was to deliver beer to Sunset Drive-Inn. Both knew that Tarlton was under construction and both knew of the barricades. As they proceeded west

along Tarlton, both Martinez and Cantu saw a pickup truck, a cement truck, and four or five men working, positioned about one and a half blocks east of Sunset Drive-Inn. Upon reaching the Drive-Inn, Martinez turned off of Tarlton and entered the driveway that connected the Drive-Inn with Tarlton. This driveway to the Drive-Inn runs in a north-south direction, is 36 feet wide, and the south line of the Drive-Inn building is 54 feet north of the north curb of Tarlton. The west boundary of the driveway is 42 feet east of Greenwood. Other cars were parked on the driveway that denied Martinez sufficient space to park defendant's truck entirely thereon. Martinez parked the truck at an angle to Tarlton, with the front part of the truck on the driveway and with the rear part extended out into the north half of the street. The record does not indicate just how far the rear end of the truck projected out into Tarlton. There is another driveway west of Sunset Drive-Inn that connects its parking area with Greenwood but the record does not indicate or show its measured location. The truck remained in this parked position for five or six minutes, during which time its rear blinker lights were flashing. It was during this interval that plaintiff drove up from the sidewalk construction area where he had been working and backed his pickup into the south curb of Tarlton where sand had been piled into a stockpile in a private driveway 10 feet wide; the west line of this driveway is 80 feet east of Greenwood. The pickup was parked at a point slightly east of the east line of the Drive-Inn's driveway into Tarlton; the east line of the Sunset Drive-Inn's driveway is 78 feet east of Greenwood. When Martinez and Cantu finished filling their customer's order, they got in their truck and Martinez began backing the truck into Tarlton, cutting the wheels slightly to the right, and continued backing until the truck struck appellant.

The exact point of impact, where defendant's truck backed into plaintiff, was not established, but it was established that such point of impact was in the south one half of

Tarlton Street; it appears to be between 5 and 11 feet south of the center of the street. A plat of the area, not, however, drawn to scale, showing pertinent locations of driveways, the barricade at the intersection of the two streets, and the positions of the pickup and truck at point of impact, is incorporated herein, as follows:

[A39381]

In answer to special issues, the jury found in substance (1) that Joe Martinez, the driver of the truck and an employee of defendant, had failed to keep a proper lookout; (2) that such failure was a proximate cause of the accident; (3) that the failure of Joe Cantu, Martinez' helper and also an employee of appellee, to direct the backing of the Lone Star Truck from outside the cab of the truck was negligence; (4) that such negligence was a proximate cause of the accident; (5) that plaintiff failed to keep a proper lookout; and (6) that such failure was a proximate cause

of the accident. The jury awarded plaintiff actual damages in the amount of $42,000.00, past medical expenses in the amount of $9,266.25 and future medical expenses in the amount of $7,000.00. Upon receipt of this verdict, the trial court entered a judgment that plaintiff take nothing. Plaintiff has duly and timely perfected an appeal to this Court.

The findings against defendant made by the jury in response to Special Issues 1–4, both inclusive, are not questioned in this appeal. Plaintiff's recovery against defendant was defeated only because of the jury findings on Special Issues 5 and 6.

We shall first consider plaintiff's First through Twelfth Points of Error, whereby, in essence, he complains of the definitions of "ordinary care", "negligence" and "proximate cause", submitted by the trial judge in his charge to the jury, and of the refusal by the trial judge to submit the definitions and instructions requested by him. The charge contained the following standard definitions:

"II.

By the term 'ordinary care,' as used in this charge, means that degree of care which would be used by a person of ordinary prudence under the same or similar circumstances.

III.

By the term 'negligence,' as used in this charge, means failure to use ordinary care; that is to say, failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

IV.

By the term 'proximate cause,' means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred; and in order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event."

Plaintiff objected to the above definitions for the reason that each and all failed to differentiate between the standard of care required of a workman in a road construction area and that of a person operating a motor vehicle in such area. He requested certain definitions and instructions that did make such a differentiation. His requested definitions and instructions were refused by the trial court.

Plaintiff contends that it was reversible error to submit only one definition of "ordinary care", "negligence" and "proximate cause" that applies indiscriminately to both plaintiff and defendant in that each and all of the definitions failed to differentiate between the care required of a workman in a road construction area and that of a person operating a motor vehicle in such an area. He insists that there are two standards of care applicable to the instant case and that under Rule 277, Texas Rules of Civil Procedure, he was entitled to his requested special instructions. He also complains of the refusal by the trial court to submit his requested instructions. Defendant counters with the observation that since plaintiff (the workman) and Martinez (the truck driver) were both adults and since a common carrier is not involved, there is but one standard of care and one definition of the above-mentioned terms applicable to both plaintiff and defendant. We agree with defendant.

Plaintiff relies heavily on Dallas Ry. & Terminal Co. v. Rogers, 147 Tex. 617, 218 S.W.2d 456 (1949) in support of his position. In that case, our Supreme Court held that a child of eleven years was not bound to exercise for her own safety the same standard of care imposed on an adult,

and that the proper standard by which to measure a child's conduct is that degree of care ordinarily exercised by children of the same age, intelligence, experience, and capacity under the same or similar circumstances. In the instant case, plaintiff is an adult and is not a child, and the same standard of care imposed upon him is the same standard as that imposed upon adults generally. *Rogers* is not in point.

Plaintiff also relies on Hill v. Texas, New Mexico & Oklahoma Coaches, Inc., 153 Tex. 581, 272 S.W.2d 91 (1954), where a passenger brought suit against a common carrier when the bus in which he was riding overturned and injured him. The definitions of "negligence" and "proximate cause" contained in the charge, though approved by our Supreme Court in the factual situation there presented, are not applicable to the case at bar because in *Hill* a common carrier was involved.

Plaintiff says that the general rules governing the conduct of pedestrians do not apply to workmen whose duties require them to be in the street, citing Switzer v. Johnson, 432 S.W.2d 164 (Tex.Civ.App., Houston 1st 1968, n. w. h.). In that case, complaints were made of evidence introduced, of jury argument, of refusal to submit requested issues, and "no evidence" and "insufficient evidence" to support the lookout issue; no objection was voiced as to any definition of "ordinary care", "negligence" and "proximate cause", and no requested instructions were asked that would have instructed the jury as to different standards of care required of the plaintiff and of the defendant. The court simply notes that under the general rule a workman outside a cross-walk but working upon the surface is not required to yield the right-of-way to passing vehicles. *Switzer* is not authority for the proposition that a special standard of care applies to plaintiff, a road construction worker.

It has long been the rule in this State that it is the duty of every adult to exercise ordinary care for his own safety, and the

cases so hold. We see nothing in the record before us that exempts plaintiff from the application of this time-tested rule. Plaintiff, the street workman, and Martinez, the driver of defendant's truck, are both adults and should be governed by the same standard of care. Ordinary care is distinguished from vigilance, caution or degree of care. We recognize that ordinary care requires the exercise of a very great degree of vigilance under some circumstances. The amount of vigilance and caution to be used varies according to the situation of the parties and the surrounding circumstances. Gulf, C. & S. Ry. Co. v. Smith, 87 Tex. 348, 28 S.W. 520 (1894). In some instances ordinary care requires the exercise of great diligence, while in other cases the exercise of the same degree of care demands but slight diligence. Pecos & N. T. Ry. Co. v. Finklea, 155 S.W. 612 (Tex.Civ.App., Amarillo, 1913).

The effect of the trial court's definitions and its refusal to give the instructions requested by plaintiff was to instruct the jury that the conduct of both plaintiff and the truck driver for defendant was to be measured by the same standard of care. The definitions submitted in the trial court's charge require no more and no less caution, vigilance or degree of care than would be expected of a person of ordinary prudence in the same or similar circumstances. The definitions did not charge plaintiff with the amount of vigilance required of a pedestrian in the street, nor did they charge him as a worker in the street with exercising the same degree of care as was expected of the driver of defendant's truck who was operating a motor vehicle in a construction area. The definitions, as submitted, required only that the actor's conduct be measured against the level of conduct expected of the ordinary man in the same or similar circumstances; in the case of plaintiff that of a workman of ordinary prudence lawfully working in a street partially open to traffic, and, in the case of defendant, that of a truck driver of ordinary prudence lawfully driving a truck

on a street which was under construction but which was partially open to traffic.

Plaintiff reasons that Article 6701d, § 24(d), § 78, § 79 and § 81, Vernon's Ann. Civ.St., awards road construction workmen different treatment from ordinary pedestrians, and that there is a difference between the standard of care that defendant owed plaintiff and the standard of care owed by plaintiff to himself to guard against injury. We do not agree. A study of these sections of this statute shows plainly that while exempt from the statutorily imposed standard for conduct for pedestrians, a workman in a road construction area is, nevertheless, subject to the amount of diligence or degree of care required under the standard of ordinary care. The test to be applied to a workman in a road construction area is that of a reasonably prudent person exercising due care under the circumstances. Article 6701d, V.A.C.S., in our opinion, does not create a special standard of care for workmen who are working on a public road or street that is partially open to traffic. We hold that a workman in a public street is charged with exercising ordinary care.

The definitions of "ordinary care" and of "negligence" as submitted by the trial court in the charge to the jury, and the failure to submit a definition of "proximate cause" that differentiated between the duties and obligations of defendant's truck driver, as operator of a motor vehicle in a road construction area, and of plaintiff, as a workman in such zone, are not, in our opinion, subject to the objections urged by plaintiff. Rule 272, T.R.C.P., provides that the trial court in its charge shall only submit controverted questions of fact to the jury for its determination, and further provides that the court shall instruct the jury as to the law arising on the facts. The definitions of "ordinary care", "negligence" and "proximate cause", as quoted above, and given in the court's charge, correctly state the law applicable to the facts in this case. Plaintiff's First through Twelfth Points of Error are, accordingly, overruled.

Special Issues 5 and 6, together with the jury answers thereto, read as follows:

## "SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that on the occasion in question Trinidad R. Lopez failed to keep such a lookout as a person using ordinary care would have kept?

Answer    'We do' or 'We do not.'

Answer    We do

If you have answered Special Issue No. 5, 'We do,' then answer Special Issue No. 6; otherwise, do not answer same.

## SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that such failure was a proximate cause of the occurrence in question?

Answer    'We do' or 'We do not.'

Answer    We do"

Plaintiff asserts that there was no evidence to support the jury findings made in response to these special issues, and, alternatively, that the findings were against the overwhelming weight and preponderance of the evidence. The question of "no evidence" is one of law and our judicial review of such question imposes upon us a duty to consider only the evidence and the inferences favorable to the jury findings and to disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965); Wallace v. Spencer Construction Co., 452 S.W.2d 17, 21 (Tex.Civ.App., Dallas 1970, wr. ref. n. r. e.). In order to consider plaintiff's points of error that the answers by the jury to Special Issues 5 and 6 were against the overwhelming weight and preponderance of the evidence, we must consider and weigh all the evidence in the record. This involves a determination of factual questions as opposed to law questions. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951). It must clearly appear that such answers are wrong before the appellate court may set them aside.

State v. Dehnisch, 437 S.W.2d 46 (Tex.Civ. App., Corpus Christi 1968, n. w. h.); Missouri-Kansas-Texas R. Co. v. Anderson, 258 S.W.2d 375 (Tex.Civ.App., Waco 1953, wr. ref. n. r. e.).

■ We shall first consider the law points of "no evidence" and view the evidence as most favorable to defendant. We are required, in considering a no evidence point, that we do not consider or give weight to any other jury finding. Enloe v. Barfield, 422 S.W.2d 905 (Tex.Sup. 1967); C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex.Sup.1966); Charles T. Picton Lumber Company v. Redden, 452 S.W.2d 713 (Tex.Civ.App., Corpus Christi 1970, wr. ref. n. r. e.). The truck driver Martinez, testified as follows: "* * * When I was holding Mr. Lopez, I remember him telling me that he saw me backing up. He thought I had seen him through the mirror." Martinez also testified that he told Cantu, his helper, and his father, Joe A. Martinez, that plaintiff made such statement; however, both Cantu and Joe A. Martinez said that they did not remember Martinez telling them that plaintiff had made the statement. The plaintiff testified that he never saw the beer truck until after the accident and denied ever telling anyone that he did. Such is the state of the record on the question of whether plaintiff ever said that he saw the truck prior to the collision.

The mere fact that the accident happened is not evidence of failure to keep a proper lookout. Plaintiff's testimony sheds very little light on the question of proper lookout as he says he did not see the truck until after the impact. Neither does the testimony from the other witnesses furnish any real assistance on plaintiff's lookout. It is undisputed that plaintiff was aware that vehicles were travelling the street on the day of the accident. It is conclusively established that defendant's truck was parked across the street from the point of impact when plaintiff reached the area of the accident for his second load of sand. The truck was then in close proximity of

plaintiff. During this time the rear blinker lights on the truck were flashing.

Plaintiff was authorized to service his pickup in the manner chosen by him and at that particular time. Such actions and movement by him were reasonably necessary for him to perform his tasks as a construction worker in the street. The evidence demonstrates that he had a legal right to be in the construction area and it was his duty to observe in a careful and intelligent manner the traffic and general situation at and in the vicinity of the sandpile, including that portion of Tarlton nearby. The fact that he was authorized to be out in the street does not excuse him from exercising ordinary care for his own safety. He was not entitled to close his eyes to that which was plainly visible and which would have been observed by a person of ordinary prudence similarly situated. It does not, however, necessarily follow that as a matter of law plaintiff did or did not keep a proper lookout. Negligence, causation, and lookout, like any other ultimate fact, may be established by circumstantial as well as direct evidence. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958); Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972 (1951); Brister v. Lasiter, 444 S.W.2d 331 (Tex.Civ.App., El Paso 1969, wr. ref. n. r. e.); Polasek v. Quinius, 438 S.W.2d 828, 838 (Tex.Civ. App., Austin 1969, wr. ref. n. r. e.); English v. Miller, 43 S.W.2d 642 (Tex.Civ. App., Amarillo, 1931 wr. ref.).

We have serious doubts that plaintiff failed to keep a proper lookout, but the statement by Martinez of what plaintiff told him immediately after the accident, coupled with the attendant circumstances existing, amounted to more than a mere scintilla and probably furnished some evidence that he did not keep such a lookout. Therefore, when all the evidence relative to plaintiff's lookout is considered and evaluated under the "no evidence" test, we believe that the rule of Lynch v. Ricketts, supra, controls. We cannot say that the trial court erred in submitting the

lookout issue on the part of plaintiff. Barrett v. Posey, 343 S.W.2d 337 (Tex.Civ. App., Houston 1961, wr. ref. n. r. e.); Hardage v. Rouly, 349 S.W.2d 616 (Tex. Civ.App., Beaumont 1961, wr. ref. n. r. e.). We overrule plaintiff's "no evidence" points as urged by him in his Eighteenth through Twenty-first Points of Error.

■ In determining whether the answers by the jury to Special Issues 5 and 6 are against the overwhelming weight and preponderance of the evidence, we must review all the evidence. In re King's Estate, supra. Before discussing and reviewing the evidence, we note the general rules on lookout and foreseeability, which, in this case should be analized before approaching the question of proximate cause. Ordinarily, proper lookout is a question for the jury. Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332 (1946); Mrs. Baird's Bread Company v. Williams, 425 S.W.2d 1 (Tex. Civ.App., Texarkana 1968, wr. ref. n. r. e.). On the other hand there is neither a legal nor a moral obligation to guard against that which cannot be foreseen in the light of common or ordinary experience, and under such circumstances the duty of foresight should not be arbitrarily imputed. Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162 (1896).

It is well settled that a person is not bound to anticipate negligent or unlawful conduct on the part of another. DeWinne v. Allen, 154 Tex. 316, 277 S.W.2d 95 (1955); McIlroy v. Wagley, 437 S.W.2d 5, 14 (Tex.Civ.App., Corpus Christi 1968, wr. ref. n. r. e.); Holland v. Collins, 457 S.W. 2d 177 (Tex.Civ.App., Amarillo 1970, wr. ref. n. r. e.).

In City of Dallas v. Maxwell, 248 S.W. 677 (Tex.Com.App.1923, opinion adopted), the court, on page 670, says:

"In this state it is now a settled doctrine that anticipation of consequences is a necessary element in determining not only whether a particular act or omission is actionably negligent, but also whether the injury complained of is proximately caused by such act or omission * * * This doctrine is the result of an effort by the courts to avoid as far as possible the metaphysical and philosophical niceties in the age-old discussion of causation, and to lay down a rule of general application which will, as nearly as may be done by a general rule, apply a practical test, the test of common experience, to human conduct when determining legal rights and legal liability. Actual anticipation is of course not in any sense the test; but what one should under the circumstances reasonably anticipate as consequences of his conduct."

Again, from the above-cited Maxwell case, the following comments also found on page 670 of the published opinion should not pass unnoticed:

"Human beings in their common dealings with each other in society should be required to exercise some degree of deliberation or forethought. It would be unreasonable to require them, before doing or refraining from doing a particular act, to exhaust the field of speculation concerning every possible or conceivable consequence which might result from their conduct. It is just that one should be charged with the duty to anticipate those consequences which in the ordinary course of human experience might reasonably be expected to result therefrom, and therefore that he should be held legally responsible for those consequences * * * *"

Although injury may result from a person's act or omission, yet, if the actor could not have reasonably foreseen the resultant injury, he is not to be held responsible therefor. Great Atlantic & Pacific Tea Co. v. Evans, 142 Tex. 1, 175 S.W.2d 249 (1943); Union Stockyards v. Peeler, 37 S.W.2d 126 (Tex.Com.App.1931).

In Gonzalez v. Perry, 390 S.W.2d 382 (Tex.Civ.App., San Antonio, 1965, wr. ref. n. r. e.), it was said:

"It has been definitely decided in this State that a pedestrian under certain circumstances and surroundings must keep a lookout to his rear for approaching automobiles. * * *"

The key to the application of the rule in any case is the phrase "under certain circumstances and surroundings". We also adhere to the rule "the facts of each case must be given independent consideration, and seldom are the facts of any two cases so identical as that the decision in one could be held to be authority for a like decision in the other", as stated in J. Weingarten, Inc. v. Brockman, 134 Tex. 451, 135 S.W.2d 698, 699 (1940). Examining the circumstances and surroundings of the case before us, we observe that this is not a case where a pedestrian was walking along a road or street, but one that involves a construction worker who was injured in the performance of work in the area of the street. This is not a case where the injured person was struck in a portion of the street where he had no right to be, but, on the other hand, the injured construction worker had every legal right to be standing in exactly the same spot where he was standing at the time he was struck by the truck. As a construction worker on a public street, he was under the protection of Article 6701d, § 24(d), V.A.C.S. His duties required that he use his own pickup in his work. When the pickup motor began to overheat, he was authorized to service it at the time, place and manner accomplished by him. He was then standing in the south half (his own right-side) of Tarlton with a barricade in the south half thereof at its intersection with Greenwood. The barricade was in place some 80–90 feet west of where he was standing which not only prevented traffic from Greenwood entering directly into the south half of Tarlton but afforded him substantial protection from lateral traffic that could conceivably have entered the south half of Tarlton after making its entry from Greenwood. We are not here concerned with whether plaintiff should have kept a proper lookout for vehicles rightfully and lawfully travelling east in the south half of Tarlton; neither are we concerned with whether he should have kept a proper lookout for vehicles rightfully and lawfully travelling west in the north half of Tarlton; nor are we concerned with whether he was overrun by a vehicle while he was walking in a portion of Tarlton. Such a situation is not before us and we express no opinion thereon. We are here confronted with the fact that plaintiff was standing in the south half of Tarlton at a point a few feet south of its center when a truck that had been parked, partly in a driveway on the north side of the street and partly in the most northerly north part of the street, backed across the street diagonally to plaintiff, traversed the entire north half of the street, crossed the center thereof and struck plaintiff.

Is the answer to Special Issue 5 that appellant failed to keep a proper lookout against the weight of the evidence? We say that it is. It is undisputed that Tarlton is a two-way street, 44 feet wide and runs in an east-west direction. It follows that westbound traffic, in the absence of obstruction or special traffic control, must remain in the north half of the street, leaving the south half open for use by eastbound traffic. There is no evidence of any obstruction or special traffic control in the area of the accident other than the barricade. Defendant's truck, upon entering Tarlton from MacArthur and in proceeding west towards Greenwood was necessarily restricted to the north half of the street in the absence of some emergency or special condition, neither of which is apparent from the record. No necessity is shown by the record as to why the driver of defendant's truck needed to back into the south half of Tarlton in order to move away from Sunset Drive-Inn's driveway. It is true that the street was not marked with a centerline

nor were traffic lanes marked on its surface, but the lack of such markings, as such, did not justify the driver's use of any more than the north half of the street. We are particularly concerned with the physical location of the two vehicles immediately prior to the accident. Plaintiff's pickup was parked perpendicular to the south curb of Tarlton and was never moved. Defendant's truck was parked across the street, partly in the driveway and partly in the street, as already stated. It was moved. In backing the truck, Martinez did not back in a straight line in keeping with the direction that he had parked; instead he cut the wheels slightly to his right that put the line of backward movement of the truck directly on collision course with plaintiff. From the record before us, when we consider the distance between the parked truck and the position of defendant at the time of impact, it is apparent that had Martinez either backed his truck out in a straight line or had cut his wheels hard to the right then he would not have collided with plaintiff.

It goes without saying that plaintiff in the few seconds required to pour water from the water can into the radiator, could not have performed this task and at the same time kept a lookout to his rear for a backing vehicle. Assuming that he had seen the truck immediately prior to his commencing the pouring of water into the radiator, he would have observed a truck that was parked in a driveway with its rear blinker lights flashing. Nothing at that time indicated just when the truck would be moved. It was shown that there were two driveways into the Sunset Drive-Inn; one entered from the north side of Tarlton and the other entered from the east side of Greenwood. Neither plaintiff nor anyone else could have determined whether the truck would back out into Tarlton or go forward into the driveway into Greenwood. The direction of movement of the parked truck prior to actual movement was known only to Martinez, and, under no circumstances, could be imputed to plaintiff. Going further, and assuming that plaintiff had

seen the parked truck and knew that it would eventually back into Tarlton, would this fact warn him that he was in danger? We think not. The north half of Tarlton was the proper lane for Martinez to use and this north half was 22 feet wide; there is nothing in the record that indicates that the truck could not have been backed out of the driveway without crossing the center into the south half of the street.

Under the circumstances existing and in the light of common experience, plaintiff had the right to assume that traffic lawfully in the north half of Tarlton would observe the traffic laws of this State and that a driver of a truck in the north half of Tarlton would not back into the south half of the street. In the case at bar no fact is revealed that would or should have called plaintiff's attention to the backing truck. Martinez did not sound his horn nor did he or Cantu give any other warning when he commenced backing the truck. Plaintiff's position at the time of the impact did not require him to foresee that Martinez might back across substantially more than 50% of the street and collide with him. Marchyn v. Silva, 455 S.W.2d 442 (Tex.Civ.App., San Antonio 1970, wr. ref. n. r. e.); Freeman v. Harkrider, 320 S.W.2d 238 (Tex.Civ. App., Amarillo 1959, n. w. h.).

We do, however, realize that a person working on a public street that is partially open to traffic is under the duty at all times to maintain a proper lookout for his own safety. Here, the evidence showed that the plaintiff was moving around in the area of construction. Earlier in the day, he was working at a location one or two blocks east of the point of impact; he drove his pickup in the street; he got out of his truck and looked for a container that could hold water; he walked from the front end of his pickup to the vacant lot, found an empty can, walked over to a low place in the street, filled the can with water, reapproached the pickup and commenced pouring water in the radiator, all without incident. In addition, he was aware that there was vehicular traffic in the street during his working hours.

The fact that plaintiff moved freely in the area of the accident immediately prior to being hit by the truck, to us, is some evidence that he did maintain some sort of lookout for his personal safety commensurate with the dangers present. And, as has been stated, the fact that he was struck from the back by a backing truck does not, of itself, convict him of failure to keep such a lookout. All of the factors and circumstances present must be carefully weighed and considered before passing judgment.

Under the existing circumstances and conditions, even if plaintiff had seen the truck backing in his direction and had then resumed the act of filling the radiator, he had a legal right to assume (1) that the driver, on moving the truck, would confine the truck to the north half of the street; (2) that the driver would give a "plainly visible or audible signal" when he backed into the street and changed his course of movement; and (3) that the driver would not change the direction of movement of the truck without first determining whether there was sufficient space for such movement to be made in safety, which the driver did not do. Holmes v. Cooley, 308 S.W.2d 150 (Tex.Civ.App., Austin 1957, wr. ref. n. r. e.); Valley Film Service v. Cruz, 173 S.W.2d 952 (Tex.Civ. App., San Antonio 1943, wr. ref. want merit).

■ In order to warrant a jury finding that the failure of plaintiff to keep such a lookout was a proximate cause of the injury, the injury must have been foreseeable by him in time to have avoided the accident. Salcido v. Bates, 436 S.W.2d 934 (Tex.Civ. App., Corpus Christi 1968, wr. rcf. n. r. e.); Strange v. Colvin, 429 S.W.2d 954 (Tex. Civ.App., Austin 1968, n. w. h.); McCauley v. Lasher, 368 S.W.2d 49 (Tex.Civ.App., Texarkana 1963, wr. ref. n. r. e.). Proximate cause cannot be established by mere conjecture or guess, nor may it be presumed. It must be proved. Ussery v. Ewell Hodges, Inc., 417 S.W.2d 332 (Tex.Civ. App., Tyler 1967, wr. ref. n. r. e.); Leather-

wood Drilling Co. v. TXL Oil Corp., 379 S. W.2d 693 (Tex.Civ.App., Dallas 1964, wr. ref. n. r. e.).

The well established law of this State is that proximate cause includes two essential elements: (1) foreseeability, and (2) cause in fact or causal relation. Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560 (1961); Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352 (1951); Couch v. Babb, 423 S.W.2d 464 (Tex.Civ.App., Beaumont 1968, wr. ref. n. r. e.); Thomas v. Beckering, 391 S.W.2d 771 (Tex.Civ.App., Tyler 1965, wr. ref. n. r. e.).

The controlling question in this case is thus narrowed to whether there is in the record evidence of probative force to support the finding of proximate cause in response to Special Issue 6. Negligent conduct is, in law, a cause in fact of harm to another only if it is a substantial factor in bringing about the harm. Other than in situations in which the conduct of more than one person contributes to the harm, negligent conduct cannot be regarded as a substantial factor in bringing about the harm if the harm would have been sustained even if the other had not been negligent. Texas & Pacific Railway Company v. McCleery, 418 S.W.2d 494, 497 (Tex.Sup.1967); B. M. & R. Interests v. Snyder, 453 S.W.2d 360 (Tex.Civ.App., Tyler 1970, wr. ref. n. r. e.). The speed of the backing truck immediately prior to the accident was approximately 5 miles per hour. At this speed, the truck was moving at 7.33 feet per second. When the rear of the truck reached the center of the street it was then between 5 and 11 feet distant from plaintiff and moving; thus, plaintiff had between three fourths and one and a half seconds to take immediate evasive action to avoid being struck. He would not have been under any duty to take any evasive action until such time as it became apparent that he was going to be hit. Our courts have held that time and distance are important factors to consider in passing on the question of setting aside lookout findings. Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79,

**786**

303 S.W.2d 359 (1957); Turner v. Clark, 412 S.W.2d 707 (Tex.Civ.App., Amarillo 1967, wr. ref. n. r. e.); Mesa Trucking Co. v. King, 376 S.W.2d 863 (Tex.Civ.App., Amarillo 1964, wr. ref. n. r. e.). When the split-second time interval available to plaintiff is considered, whether he was maintaining a proper lookout at that moment is probably immaterial, because the impact was imminent and it was impossible for him to have avoided being hit. Consequently, the speed of the truck and the distance backed by it are particularly cogent reasons why the answers to Special Issues 5 and 6 are against the great weight and preponderance of the evidence.

We find that the evidence in this case is factually insufficient to show that plaintiff's failure to keep a proper lookout was the cause of the accident or to support foreseeability which are prerequisites to proximate cause. Solana v. Hill, 348 S.W.2d 481 (Tex.Civ.App., Eastland 1961, wr. ref. n. r. e.), and the cases there cited. It has been held that the failure to keep a proper lookout can only be deemed a proximate cause where "the keeping of it would have prevented the unfortunate occurrence". Texas & P. Ry. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049 (1905); Gulf, C. & S. F. Ry. Co. v. Russell, 125 Tex. 443, 82 S.W.2d 948 (1935); Salcido v. Bates, supra, and the cases cited therein.

Under the facts and circumstances shown here, when all of the evidence is considered together with all inferences that can reasonably be drawn therefrom, both that supporting the jury findings and that contrary thereto, we are of opinion and so hold that the jury findings in response to Special Issues 5 and 6 are against the great weight and preponderance of the evidence. Plaintiff's Twenty-second and Twenty-third Points of Error are, accordingly, sustained.

The judgment of the trial court is reversed and the cause is remanded for new trial.