

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-11-00459-CV

**VIA METROPOLITAN TRANSIT**,
Appellant

v.

Gerald Anthony **GARCIA**,
Appellee

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-12350
Honorable Victor Hugo Negron Jr., Judge Presiding

Opinion by:    Rebecca Simmons, Justice
Dissenting Opinion by:  Marialyn Barnard, Justice

Sitting:       Rebecca Simmons, Justice
               Steven C. Hilbig, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  December 5, 2012

AFFIRMED

Gerald Anthony Garcia brought a negligence action against VIA Metropolitan Transit. The jury found VIA negligent and awarded damages to Garcia.  In a single issue, VIA contends the trial court erred in refusing to submit to the jury its requested questions on Garcia's negligence and proportionate responsibility.  We affirm the trial court's judgment.

**BACKGROUND**

On October 5, 2004, Garcia, a motorcycle traffic officer with the San Antonio Police Department, responded to a request for assistance from an officer who had been hit by a vehicle. Officer Garcia testified that when he arrived at the accident scene at the intersection of Basse Road and Blanco Road, there was heavy traffic congestion. In an effort to relieve the congestion and to prevent further accidents, Officer Garcia began directing traffic.

After several minutes, Garcia observed a VIA van stopped in a southbound lane of Blanco Road. Garcia made eye contact with the van driver, Edward Bates, and the driver acknowledged him. Garcia then "motioned for the VIA [van] to proceed southbound." The VIA van began moving southbound as directed by Garcia. Both Garcia and Bates agree that while the van was still transiting the intersection, Garcia turned his head (not his body) to look at the drivers in the northbound lanes, and he directed them to proceed northbound. While Garcia's head was turned towards the northbound traffic, the van struck Garcia with its mirror. Bates claimed he was traveling at approximately 5–10 miles per hour when the mirror struck Officer Garcia in the left shoulder. The impact propelled Garcia several feet from where he stood. He fell to the ground and grabbed his shoulder in pain. Bates offered no explanation for the incident other than he did not see Garcia at the moment of impact.

Garcia sued VIA alleging the van operator's negligence proximately caused his injuries. Specifically, Garcia alleged the van operator was negligent in failing to (1) maintain a proper lookout, (2) apply the brakes in a timely manner, and (3) maneuver the van to avoid hitting Garcia. Citing section 544.007 of the Texas Transportation Code, Garcia also alleged the van operator was negligent per se in failing to yield the right-of-way to a pedestrian lawfully in an

intersection. VIA generally denied Garcia's allegations, and asserted several defenses, including negligence by Garcia in failing to keep a proper lookout.

The case was tried to a jury. VIA asked the trial court to submit questions to the jury on Garcia's alleged negligence and proportionate responsibility, but the trial court refused. After deliberating, the jury found VIA's negligence proximately caused Garcia's injuries and found damages in the amount of $119,100.92. The trial court determined prejudgment interest to be approximately $30,507.00. However, based on the verdict and the parties' stipulations that VIA's liability was limited by the Texas Tort Claims Act, the trial court rendered judgment in favor of Garcia and awarded him $100,000.00 in actual damages, and any post-judgment interest accrued until paid. It taxed costs of court against VIA. VIA appealed.

## RIGHT TO JURY QUESTIONS

In its sole issue on appeal, VIA contends the trial court erred by refusing to submit its requested jury questions regarding Garcia's negligence and his proportionate responsibility. VIA asserts there was evidence to support the requested submissions and that it submitted the requested questions in substantially correct form.

Garcia responds that VIA failed to produce any evidence of Garcia's negligence in part because there was no testimony concerning the standard of care of a traffic officer directing traffic or that Officer Garcia breached that standard of care. Furthermore, Garcia asserts that VIA's requested jury questions were not tendered in substantially correct form and were therefore properly refused.[1]

---

[1] Because we decide the propriety of VIA's negligence and proportionate responsibility questions on other grounds, we do not address the questions' form.

**STANDARDS OF REVIEW**

A trial court must submit to the jury the questions "which are raised by the written pleadings and the evidence." TEX. R. CIV. P. 278; *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002). The rule imposes "a substantive, nondiscretionary directive to trial courts [that requires] them to submit requested questions to the jury if the pleadings and any evidence support them." *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 746 (Tex. App.—Fort Worth 2008, pet. dism'd) (citing *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992)). Accordingly, we review the trial court's refusal to submit questions de novo. *Fin. Ins. Co. v. Ragsdale*, 166 S.W.3d 922, 926 (Tex. App.—El Paso 2005, no pet.); *see Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex. 1992) (per curiam) (holding it is reversible error to deny submission of a question raised by the pleadings and the evidence).

In determining whether expert testimony is necessary, we also apply a de novo standard of review. *See FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 90 (Tex. 2004).

**ANALYSIS**

**A. Traffic Officer's Duty and Standard of Care**

To determine whether the trial court erred by refusing to submit the negligence and proportionate responsibility questions requested by VIA, we must examine the record for evidence of Garcia's negligence. *See Elbaor*, 845 S.W.2d at 243. To support the submission of the question of Garcia's negligence to the jury, VIA had to produce some evidence that (1) Garcia owed a legal duty to VIA; (2) Garcia breached that duty; and (3) damages proximately resulted from the breach. *See id.* (requiring some evidence to warrant submission of a question); *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 663 (Tex. 1999) (Baker, J., concurring) (negligence

elements). We turn then to the duty owed by Officer Garcia to look out for his safety and the appropriate standard of care owed to the public.

### 1. VIA's Argument

VIA contends Garcia had a duty to exercise ordinary care for his own safety while he was in the intersection. VIA points to testimony of an eyewitness that Garcia turned his head away from the VIA van before it hit him.[2] VIA asserts that the witness testimony is evidence that Garcia breached his duty when he failed to keep a proper lookout by (1) choosing to direct traffic in a manner in which the traffic passed both in front of and behind him, and (2) turning his head in the opposite direction after he made eye contact with the VIA van's driver and motioned the van to proceed southbound through the intersection.

### 2. Garcia's Argument

Garcia responds that the standard of care applicable to a traffic officer is different than that applicable to a pedestrian. He asserts that because traffic control requires specialized training, expert testimony is required. Garcia insists that VIA failed to produce expert testimony establishing (1) the standard of care for a traffic officer acting under the duty to direct traffic and (2) that Garcia committed an act or omission that breached that duty.

We first address the standard of care applicable to Garcia and then examine whether expert testimony was necessary to establish the standard and breach.

### 3. Duty of Care

"The existence of a duty is a question of law for the court to decide from the particular facts of the case." *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 289 (Tex. 1996).

---

[2] Kenneth Draper witnessed the accident and although he stated it was the VIA van driver's responsibility to make sure the van did not hit Garcia, he also stated: "I would think that at some point if you saw a bus coming at you, and you know there's a mirror sticking out, I would think maybe take a step forward or something."

Texas has long recognized the duty of every adult to exercise ordinary care for his own safety, including the duty to keep a proper lookout. *See Lopez v. Lone Star Beer, Inc. of Corpus Christi*, 465 S.W.2d 774, 779 (Tex. Civ. App.—Corpus Christi 1971, writ ref'd n.r.e.). This duty has been applied to pedestrians, motorists, and street workmen. *See Murphy v. Hammons*, 509 S.W.2d 845, 845–46 (Tex. 1974) (pedestrian); *Montes v. Pendergrass*, 61 S.W.3d 505, 509 (Tex. App.—San Antonio 2001, no pet.) (motorists); *Lopez*, 465 S.W.2d at 779 (street workmen). But we find no cases that describe the standard of care owed by a police officer performing his duty to direct traffic.

VIA compares Garcia's duty to that of a pedestrian to exercise ordinary care for his safety and keep a proper lookout, and directs us to cases involving accidents between vehicles and pedestrians in which there was some evidence to support the pedestrian's failure to keep a proper lookout. *E.g.*, *Montes*, 61 S.W.3d at 509. But none of VIA's cited cases involve a police officer charged with the duty to direct traffic at a busy intersection. VIA concludes that "Garcia had a duty to exercise ordinary care for his own safety, regardless of the fact that he was lawfully in the intersection directing traffic as part of his duties as a police officer." But we are not persuaded that Garcia's standard of care in directing traffic at a busy intersection is the same as a pedestrian's to keep a proper lookout while crossing the street.

At trial, the parties agreed that Garcia was acting in his role as a police officer charged with directing traffic at the intersection when he was struck by the VIA van. As noted above, VIA contends Garcia was negligent because he (1) controlled the intersection, (2) could have stopped the northbound traffic until the southbound VIA van cleared the intersection, and (3) deliberately turned his attention away from the VIA van before it passed by the point where he was standing to direct traffic. VIA characterizes this case as one involving an "accident between

a bus and a pedestrian." But its negligence claims relate to actions Garcia took or did not take while performing his duty to direct traffic. Vested with the authority to regulate traffic, Garcia had a duty and corresponding standard of care to protect his own safety that was dramatically different than that of an ordinary pedestrian.

### 4. *Duty When Regulating Traffic*

#### a. Official Function

Traffic regulation is a governmental function. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(21) (West 2005). Texas law grants the authority to regulate traffic to state and local governments. *See* TEX. TRANSP. CODE ANN. § 542.202(a)(1) (West 2011). Local governing authorities are vested with authority to control and regulate traffic on their roads, and employ police officers to direct traffic. *See id.* § 541.002(3)–(4) (local authority, police officer definitions); *id.* § 542.202 (West Supp. 2009) (local authorities); *id.* § 251.151 (West 1999) (commissioner's court); *id.* § 701.004 (compensating officers) (West 2011). Not only is a police officer authorized to regulate traffic, "a person may not willfully fail or refuse to comply with a lawful order or direction of" a police officer while directing traffic. TEX. TRANSP. CODE § 542.201 (West 2011).[3]

#### b. Pedestrian's Duty

In contrast, a pedestrian is not authorized to regulate or direct traffic. *See Hoechst Celanese Corp. v. Compton*, 899 S.W.2d 215, 227 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (noting that "only government authorities and their agents are entitled to regulate traffic on public roadways"). A pedestrian is typically a person trying to cross a street rather than

---

[3] Interestingly, a person may not "injure, knock down, or remove" an official traffic-control device. *See* TEX. TRANSP. CODE ANN. §§ 541.002(3)–(4), 544.005 (West 2011).

control traffic in an intersection. *E.g.*, *Murphy*, 509 S.W.2d at 845–46. A pedestrian's duty in or crossing a street is to keep a lookout merely for his own safety. *See id.* at 846.

### c. Police Officer's Duty

On the other hand, police officers are public servants responsible for the public's safety. *See, e.g.*, *Hale v. Burgess*, 478 S.W.2d 856, 858 (Tex. Civ. App.—Waco 1972, no writ). In performing this responsibility, they are often compelled to sacrifice their own safety to benefit the public. *See Blackwell v. Harris Cnty.*, 909 S.W.2d 135, 137–38, 140 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (recognizing, in the case of a police officer's death while allegedly directing traffic, that police officers' duty may place them in danger for the public's benefit). One of their roles is regulating traffic. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(21) (West 2005). Directing traffic is dangerous: it requires officers to put their own safety at risk to protect the public from accident, injury, or even death. *See Ventura-Salmeron v. State*, No. 03-98-00470-CR, 2000 WL 140906, at *1 (Tex. App.—Austin Feb. 3, 2000, pet. ref'd) (not designated for publication) (relating how a pickup truck struck and injured two police officers who were directing traffic at an accident scene on Interstate Highway 35); *Hale*, 478 S.W.2d at 858 (addressing a case where a police officer at an accident scene was struck by a vehicle and seriously injured). We reject VIA's argument that a police officer directing traffic has the duty of a pedestrian. Instead, we hold that a police officer directing traffic has a duty to keep the lookout that a reasonable police officer would keep while directing traffic under similar circumstances. We next examine whether expert testimony was necessary to establish Garcia's negligence.

**B. Expert Testimony Was Necessary to Establish Garcia's Standard of Care and Breach**

Garcia maintains that the trial court properly denied VIA's requested questions on Garcia's negligence and proportionate responsibility because VIA presented no expert testimony to establish that Garcia, as a professional law enforcement officer directing traffic, was negligent. VIA responds that expert testimony was unnecessary to assist the jury in determining whether Garcia was negligent because "any ordinary juror" could have reached a decision on the issue of negligence because Garcia was required to keep a lookout similar to that of a pedestrian. We have rejected this standard, and have determined that a traffic officer has a duty to keep a lookout that a reasonable police officer directing traffic would keep under similar circumstances. The remaining question is whether expert testimony was necessary to support VIA's assertion of a breach of that standard.

"'Expert testimony is necessary [to establish the applicable standard of care] when the alleged negligence is of such a nature as not to be within the experience of the layman.'" *FFE Transp. Servs.*, 154 S.W.3d at 90 (quoting *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982)); *accord Ethicon Endo-Surgery, Inc. v. Gillies*, 343 S.W.3d 205, 211 (Tex. App.—Dallas 2011, pet. denied). "In determining whether expert testimony is necessary to establish negligence, Texas courts have considered whether the conduct at issue involves the use of specialized equipment and techniques unfamiliar to the ordinary person." *FFE Transp. Servs.*, 154 S.W.3d at 91; *accord Ethicon Endo-Surgery*, 343 S.W.3d at 211. If the conduct at issue involves the use of specialized techniques, then expert testimony is necessary to establish the standard of care and a violation of that standard. *See FFE Transp. Servs.*, 154 S.W.3d at 91; *Ethicon Endo-Surgery*, 343 S.W.3d at 211 (marketing of specialized medical device required expert testimony to establish negligent marketing).

When a defendant seeks to present a question of the plaintiff's negligence to the jury and the alleged negligence requires expert testimony, the defendant has the burden to produce expert testimony of the plaintiff's negligence. *See Elbaor*, 845 S.W.2d at 245.

### 1. *VIA's Argument*

VIA relies on *Lopez v. Lone Star Beer, Inc. of Corpus Christi* to support its contention that expert testimony was unnecessary. *Lopez v. Lone Star Beer, Inc. of Corpus Christi*, 465 S.W.2d 774, 779 (Tex. App.—Corpus Christi 1971, writ ref'd n.r.e.). In that case, a construction worker sued the owner of a truck that backed into him while he was bent over the engine of his pickup truck that was parked perpendicular to the street. *Id.* at 775–76. The owner claimed the worker's injuries were a result of the worker's failure to keep a proper lookout. *See id.* at 777. On appeal the court rejected the argument that the worker was subject to a specialized standard of care. *Id.* at 780. *Lopez* is readily distinguishable: Lopez was not a traffic officer performing his duty to direct traffic. Unlike Garcia, Lopez was merely a pedestrian. Lopez's standard of care while standing in the street in front of his truck was within the experience of a layman; his standing in front of his truck did not require any specialized skill or training. *Cf. Ethicon Endo-Surgery*, 343 S.W.3d at 211–12.

### 2. *Evidence of Specialized Techniques*

Garcia testified during the trial that directing traffic requires special training and skills not possessed by ordinary pedestrians. Garcia testified that he went through a selection process to be accepted into the traffic division and was then required to undergo additional training above and beyond that of other police officers. VIA concedes that "[p]erhaps Garcia was utilizing traffic control techniques at the time of the accident that are beyond the common knowledge of the jury," but asserts that Garcia's negligence did not stem from directing traffic

but by failing to position himself in a way to avoid the accident. But the question of the appropriateness of Garcia's position cannot be resolved without evidence of how a traffic control police officer would position himself at such an intersection. *Cf. Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797 (Tex. 2006) (citing *Hoechst Celanese Corp.*, 899 S.W.2d at 227–28) (recognizing that "peace officers are specifically trained to direct traffic").

### 3. *Necessity of Expert Testimony*

Garcia's testimony at trial, discussed above, supports the conclusion that the conduct at issue—Garcia's actions in directing traffic—involves the use of techniques unfamiliar to the ordinary person. Further, Garcia's alleged negligence is not within the experience of a layman because an ordinary person lacks the requisite authority and training to direct traffic. *See FFE Transp. Servs.*, 154 S.W.3d at 90. Therefore, VIA was required to present expert testimony to establish the standard of care applicable to a law enforcement officer directing traffic and evidence of the breach of that standard. *See id.* at 90–91. Because VIA presented only the lay testimony of Kenneth Draper, an eyewitness to the accident, VIA failed to produce some evidence that Garcia breached a legal duty to VIA. *See Mellon Mortg. Co.*, 5 S.W.3d at 663 (Baker, J., concurring).

### 4. *No Evidence of Breach*

The dissent argues that even if expert testimony was required to establish the standard of care and breach, Garcia's testimony was some evidence to support the submission of a contributory negligence question. However, the record is devoid of any evidence that Garcia was negligent. There is no testimony regarding the standard of care other than Garcia testifying that he acted in accordance with his training. Garcia certainly never testified that he directed traffic improperly when he waived the VIA van through the intersection and turned his head.

The dissent's reliance on Garcia's purported admission of responsibility for the accident is misplaced. Garcia's testimony was focused on VIA's fault in striking him in the intersection. During cross-examination Garcia testified that he was in charge of traffic control in the intersection and was responsible for waiving the VIA van forward. He agreed, to that extent, that he had some responsibility for what ensued. But his testimony continued; Garcia testified that he acted properly when he selected the place to stand and when he looked at opposing traffic shortly before he was struck. Considered in context, Garcia's testimony is a far cry from an admission of culpability or a breach of duty; it is no evidence of negligence.

## CONCLUSION

A police officer directing traffic does not owe the same duty as a pedestrian to keep a proper lookout and exercise ordinary care for his own safety. An officer directing traffic utilizes "techniques unfamiliar to the ordinary person," thus, Draper's lay testimony was insufficient to establish Garcia's negligence. *See FFE Transp. Servs.*, 154 S.W.3d at 90–91. Because VIA adduced no expert testimony establishing a police officer's standard of care while directing traffic or Garcia's breach of that standard, there was no competent evidence to support VIA's assertion that Garcia was negligent. *See Mellon Mortg. Co.*, 5 S.W.3d at 663 (Baker, J., concurring). We conclude that the trial court did not err in refusing to submit to the jury VIA's requested questions on Garcia's negligence and proportionate responsibility. Therefore, we affirm the trial court's judgment.

Rebecca Simmons, Justice