# DISSENTING OPINION

No. 04-11-00459-CV

**VIA METROPOLITAN TRANSIT**,
Appellant

v.

Gerald Anthony **GARCIA**,
Appellee

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-12350
Honorable Victor Hugo Negron Jr., Judge Presiding

Opinion by:   Rebecca Simmons, Justice
Dissenting Opinion by:  Marialyn Barnard, Justice

Sitting:      Rebecca Simmons, Justice
              Steven C. Hilbig, Justice
              Marialyn Barnard, Justice

Delivered and Filed:  December 5, 2012

The majority opinion, which holds VIA is not entitled to jury questions on contributory negligence or proportionate responsibility, is based on two premises: (1) expert testimony was necessary on the alleged contributory negligence of Garcia before VIA was entitled to a contributory negligence and proportionate responsibility jury charge; and (2) there was no expert testimony presented on the issue of contributory negligence.  Because I disagree with both premises, I respectfully dissent.

## NECESSITY OF EXPERT TESTIMONY

Garcia contends it was incumbent upon VIA to establish, through expert testimony, the standard of care applicable to Garcia and that the standard was breached.  Garcia argues that because VIA presented no expert testimony to establish that Garcia, as a professional law enforcement officer directing traffic, was negligent, the trial court properly denied its requested

questions on contributory negligence and proportionate responsibility. VIA counters that expert testimony was unnecessary to assist the jury in determining whether Garcia was contributorily negligent because VIA never asserted that Garcia's negligence in directing or controlling traffic was a cause of his injuries; rather, VIA has always claimed Garcia was negligent in failing to keep a proper lookout and failing to position himself so as to avoid an accident. In determining whether expert testimony was necessary, we apply a de novo standard of review. *See FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004).

"Expert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of laymen." *Id.* at 90 (quoting *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982)). In essence, Garcia contends, and the majority agrees, expert testimony was necessary to support a claim that Garcia was negligent because a different standard of care applies to him as a police officer directing traffic in a busy intersection, i.e., the standard of care applicable to a reasonably prudent traffic officer, which could only be presented to the jury through expert testimony. I contend this is incorrect based on the pleadings and evidence in this case.

Texas has long imposed a duty on adults to exercise ordinary care for their own safety, which includes the duty of pedestrians to keep a proper lookout. *E.g., De Winne v. Allen*, 154 Tex. 316, 277 S.W.2d 95, 98 (1955) (holding that every person proceeding along or across public street is under duty at all times to maintain proper lookout for his own safety, and may not proceed blindly and in disregard of dangers that might reasonably be anticipated to exist); *Brown v. Dallas Ry. & Terminal Co.*, 226 S.W.2d 135, (Tex. Civ. App.—Amarillo 1949, writ ref'd) (holding that mere fact person has right of way under statute or ordinance does not excuse him from keeping proper lookout for his own safety); *Norris Bros. v. Mattinson*, 145 S.W.2d 204,

208 (Tex. App.—Fort Worth 1940, no writ) (holding law requires each and every person traveling upon or across public thoroughfares to keep proper lookout for his own safety); *Stehling v. Johnston*, 32 S.W.2d 696, 698 (Tex. App.—San Antonio 1930, writ ref'd) (holding pedestrian has duty to protect himself from heedless acts of others as may be anticipated or foreseen from his vantage point). A proper lookout is one that a person of ordinary care would keep under the same or similar circumstances. *Stehling v. Johnston*, 32 S.W.2d 696, 698 (Tex. Civ. App.—San Antonio 1930, writ ref'd). In other words, a proper lookout requires a person "'to see what a person in the exercise of ordinary care and caution for the safety of herself and others would have seen under like circumstances,' taking steps to guard against accidents as necessary." *Montes v. Pendergrass*, 61 S.W.3d 505, 509 (Tex. App.—San Antonio 2001, no pet.) (quoting *Lopez v. City Towing Assocs., Inc.*, 754 S.W.2d 254, 263 (Tex. App.—San Antonio 1988, writ denied)).

In the traffic context, a proper lookout encompasses the duty to observe, in a careful and intelligent manner, traffic and the general situation in the vicinity, including the speed and proximity of vehicles, rules of the road, and common experience. *Montes*, 61 S.W.3d at 509. Although one is not required to anticipate negligent or unlawful conduct by others, a person may not close his eyes "to that which [is] plainly visible and which would have been observed by a person of ordinary prudence similarly situated." *Id.* (quoting *Lynch v. Ricketts*, 158 Tex. 487, 314 S.W.2d 273, 275 (1958)). This standard of care is, in my opinion, within the ken of laymen, and therefore does not require expert testimony.

Garcia, however, claims expert testimony was required because he was an officer directing traffic in a busy intersection, utilizing specialized training, standard, and techniques unfamiliar to laymen. In other words, Garcia contends, and the majority agrees, Garcia is

governed by a specialized standard of care. In support of his position, Garcia cites numerous cases in which courts held expert testimony was required. However, in each of the cases cited by Garcia, the alleged negligence flowed from the use of the specialized equipment or industry standards. For example, Garcia relies on this court's opinion in *Greater San Antonio Transp. Co. v. Polito*, No. 04-10-00330-CV, 2011 WL 2893080 (Tex. App.—San Antonio 2011, pet. denied) (mem. op.). In that case, Polito was injured when his motorcycle was struck by a cab. *Id.* at *1. At trial, the cab driver testified the radio in his cab "made a loud feedback noise," which he had heard only twice before in three years. *Id.* He testified he leaned down to adjust the radio when the accident occurred. *Id.* There was other testimony at trial that the cab driver was distracted by looking down at the computer in his taxi when the accident occurred. *Id.* at *2. The evidence showed the computer monitor has a screen that displays written messages and buttons to push to accept or reject a call. *Id.* The cab company presented a witness who testified that equipment placement in the company's cabs is based on industry standards, and cabs are inspected every six months by the police department for compliance with safety standards. *Id.* at *1.

Polito's negligence claims were based in part on the placement of the radio, the sound of the radio, and the placement of the computer monitor. *Id.* at *2. Based on the placement of the equipment in the cab, the jury found the cab company thirty percent negligent. *Id.* at *1. On appeal, the cab company argued the evidence was insufficient to support the jury's negligence finding against the cab company because the case involved specialized equipment and industry standards, requiring Polito to provide expert testimony with regard to the standard of care, which he failed to do. *Id.* at *2. This court agreed, holding that the case involved "specialized equipment unique to taxi cabs," the use of which was unfamiliar to a lay person. *Id.* at *4. We

noted few people outside the taxi industry are familiar with dispatch equipment, the manner in which it functions, and the placement of such equipment. *Id.* However, we were careful to point out that Polito's claims were in fact based on the placement of the equipment, not merely on the fact that the cab was equipped with dispatch equipment, and therefore expert testimony was required. *Id.*

Unlike *Polito*, VIA's claim that Garcia was negligent was not based on his use of specialized equipment or even training in directing or controlling traffic. Rather, the record makes it clear that VIA was asserting Garcia was negligent in turning away from the VIA van before it passed him, and in failing to properly position himself so as to avoid the accident. In other words, VIA merely contended that Garcia failed to maintain a proper lookout. Thus, any specialized information regarding traffic direction or control techniques, or specialized equipment was unnecessary. Certainly, an ordinary juror could determine whether Garcia could have avoided being struck by the van by either keeping his eye on the van until it cleared the intersection or by positioning himself out of harm's way, or whether the exercise of ordinary care required that he do so under the circumstances.

In my opinion, this case is more analogous to the decision in *J.D. Abrams, Inc. v. McIver*, 966 S.W.2d 87 (Tex. App.—Houston [1st Dist.] 1998, pet. denied), which is relied upon by VIA. In that case, a motorist was injured when he was rear-ended by an intoxicated driver on a portion of a highway that was under construction. *Id.* at 90. The plaintiff sued the intoxicated driver and two construction companies that controlled the portion of the highway where the accident occurred. *Id.* A jury found all three defendants negligent and apportioned responsibility as follows: seventy-five percent to the intoxicated driver, twenty percent to one construction company, and five percent to another construction company. *Id.* On appeal, the construction

company found twenty percent responsible argued there was insufficient evidence to support the jury's finding that it was negligent. *Id.* at 92. Specifically, the company claimed the plaintiff failed to present expert testimony establishing the standard of care applicable to a highway construction company "performing sophisticated operations" or that a breach of such a standard occurred. *Id.* at 93.

The court of appeals recognized that some cases require expert testimony because the alleged negligence in not within the common experience of the average laymen. *Id.* However, the court held this was not such a case, holding that driving an automobile in areas of road construction and automobile accidents are not outside the understanding of the average layman. *Id.* Moreover, neither the use of specialized equipment nor construction techniques, even though likely in use at the time of the accident, were not at issue in the accident itself. *Id.* Accordingly, the court held the plaintiff was not required to present expert testimony to establish the proper standard of care for the construction company. *Id.*

This case involves an accident between a van and a pedestrian—Garcia brought this suit in his capacity as an individual, not as a police officer—and therefore, the ordinary rules of the road relating to such situations are within the common knowledge and understanding of the average juror. Moreover, just as in *J.D. Abrams*, Garcia's specialized training in traffic control or traffic control procedures were not at issue. The majority makes much of the parties agreement "that Garcia was acting in his role as a police officer charged with directing traffic at the intersection when he was struck," and in fact relies upon it heavily in reaching its conclusions. However, VIA never argued or in any way contended that Garcia's negligence in directing or controlling traffic was a *cause* of his injuries; rather, VIA has always claimed Garcia

was negligent in failing to keep a proper lookout and failing to position himself so as to avoid an accident.

If we accept Garcia's contention, we would be holding police officers, who according to the majority are better trained and have more skills than the average person to a more liberal standard of care than that long-imposed on regular pedestrians. And, although the majority is correct that there is no specific case rejecting a special standard of care for officers in this type of situation, a special standard of care has been rejected for workmen whose job duties require them to work in the street around traffic. *See Lopez v. Lone Star Beer, Inc. of Corpus Christi*, 465 S.W.2d 774, 779 (Tex. App.—Corpus Christi 1971, writ ref'd n.r.e.).

In *Lopez*, an injured street construction worker sued the owner of a truck that backed into him. *Id.* at 775. At trial, the jury found in response to special issues that the cause of the worker's injuries was his failure to keep a proper lookout. *Id.* at 778–79. The trial court therefore entered a take nothing judgment in favor of the defendant. *Id.* On appeal, the worker complained of the special issues relating to his negligence, arguing he was not subject to the ordinary standard of care applicable to regular pedestrians, as submitted by the court, but was subject to a specialized standard of care applicable to road construction workers. *Id.* at 779. The court of appeals rejected this argument, pointing to the long-standing law in Texas that it is the duty of every adult to exercise ordinary care for his safety. *Id.* at 779. The court said it was sufficient that the jury was advised to measure the worker's conduct against the level of conduct expected of the ordinary man in the same or similar circumstances. *Id.* In other words, the worker's conduct would be measured against that of a workman or ordinary prudence lawfully working in a street partially open to traffic. *Id.*

Thus, according to the holding in *Lopez*, Garcia's conduct would be measured against the level of conduct expected of a police officer lawfully directing traffic in a busy, congested intersection. *See id.* This is exactly what the jury was instructed to do pursuant to the trial court's definition of ordinary care, "that degree of care which would be used by a person of ordinary prudence under the same or similar circumstances." I have found no authority, nor has the majority or Garcia cited any, that would accord police officers to a more liberal standard of care than that of an ordinary, prudent person in the same circumstance.

Moreover, the majority's decision to accept Garcia's claim that expert testimony is required, i.e., that he is entitled to a specialized standard of care, is not supported by the instruction that accompanied the negligence question actually submitted to the jury. The jury was instructed that:

> The law forbids failing to yield the right-of-way to **pedestrians** lawfully in the intersection. A failure to comply with this law is negligence in itself.

(emphasis added). This instruction, which the majority wholly ignores, is a negligence per se instruction and was requested *by Garcia* and submitted over VIA's objection. The instruction, as pointed out by VIA in its brief, treats Garcia as an ordinary pedestrian, advising the jury that if Garcia was lawfully in the intersection as a pedestrian, it was negligence per se for the VIA van to fail to yield the right of way to him. Garcia argued he was entitled to this instruction, yet he seeks to avoid the reciprocal duty of a pedestrian to keep a proper lookout by claiming he is entitled to a specialized standard of care. This is an inconsistent position.

Finally, submitting Garcia's negligence, as requested by VIA, would have permitted the jury to take into account all the circumstances pointed to by Garcia to support his request for a special standard of care. The jury would have considered whether Garcia, as a police officer

who was lawfully directing traffic in a congested intersection, did what a prudent police officer in the same or similar circumstances would have done. If the issue of Garcia's alleged negligence was properly submitted to the jury, the jury would have been required to determine: (1) whether Garcia exercised care in turning his focus away from the VIA bus, or whether he should have watched the van proceed through the entire intersection before turning his to direct traffic in the opposite direction; (2) whether Garcia positioned himself appropriately under the circumstances; and (3) whether Garcia, in the exercise of reasonable care required of an ordinary person in the situation could have avoided the accident. I believe the jury could have determined the answers to these questions without the aid of expert testimony. Accordingly, I would hold expert testimony was not required.

## EXISTENCE OF EXPERT TESTIMONY

However, even if the majority is correct, and expert testimony was required, there is expert testimony in the record sufficient to entitle VIA to its requested jury questions on contributory negligence and proportionate responsibility. The evidence was provided by Garcia himself.

Garcia testified he began his career as a police officer in 1985 when he began the training process. He started his career as a patrol officer and remained in that position for seventeen or eighteen years. However, Garcia stated he ultimately left the patrol division and went into the traffic division, testifying he always wanted to be a motorcycle officer. He spent a year as a "regular" traffic officer before he became a motorcycle officer. As a traffic officer he was responsible for handling anything on the roads: accidents, debris in the roadway, malfunctioning traffic lights, etc. After a year, he went to motorcycle school for more specialized training. As an officer, he had been directing traffic for twenty-six years.

Garcia testified he was trained to direct traffic and had directed traffic "[t]housands of times."  He described how he was taught to position himself in intersections for purposes of directing traffic.  He testified about a driver's responsibility at an intersection when the traffic is controlled by a police officer.  Clearly, Garcia, by his own admission, is an expert in directing and controlling traffic.

Here, Garcia testified he was in charge of the intersection, completely in control of the situation, and had the right and responsibility to "tell [the VIA driver] what to do – whether to go, to stop, to move or what to do."  He acknowledged the van took up all but 7.2 inches on either side of the lane in which it travelled, and that he could have stopped the northbound traffic while the van proceeding through the intersection to ensure there was enough space for him to safely pass.

Garcia admitted his position at the scene was at his discretion; he was the one to determine where it would be best or most safe to stand.  He chose to position himself in the middle of the intersection where traffic was passing in front of and behind him.  Garcia agreed he could have positioned himself where all the traffic passed in front of him.

Garcia admitted waving the van into the intersection and then turning his head away. Specifically, he stated that after he made eye contact with the VIA driver and waived him forward, he "turned [his] head" away from the van, focusing his attention on the vehicles in the northbound land.  Significant to the issue in this appeal, Garcia agreed with VIA's counsel when counsel asked if Garcia agreed with a witness who testified that Garcia had "a measure of responsibility for what happened in this accident."

Garcia's expert testimony constitutes some evidence from which reasonable jurors could have believed Garcia failed to exercise ordinary care for his own safety.  This evidence was also

sufficient to allow a jury to find Garcia's negligence was a proximate cause of the accident, i.e., if he had exercised ordinary care–positioned himself so all traffic passed in front of him, stopped the northbound traffic to allow the VIA van to safely traverse the intersection, kept his eyes on the VIA van as it approached him–he could have avoided the accident. The evidence set forth above would enable reasonable and fair-minded people to find Garcia's actions were negligent and caused or contributed to the cause of the accident. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (test for legal sufficiency is whether evidence at trial would enable reasonable and fair-minded people to reach the verdict).

Here, Garcia, by his own admission, placed himself where traffic would cross in front and behind him. He admittedly made eye contact with the VIA driver and then waved him into the intersection. Garcia could see the size of the van, and had to be aware that it would take up a great deal of the lane, particularly with its extended mirrors. Despite this knowledge, Garcia turned his head away from the van, and the potential danger, to direct traffic in the opposite direction to move forward. Any juror could recognize the potential folly in this course of action– a large van with extended mirrors coming toward you with very little clearance between Garcia and the van.

Given that to be entitled to submission of a jury question, there need only be legally sufficient evidence, i.e., some evidence, I do not believe the majority's position is tenable. *See Block v. Mora*, 314 S.W.3d 440, 445 (Tex. App.—Amarillo 2009, pet. dism'd). When we look only at the evidence supporting Garcia's negligence and ignore all evidence to the contrary, there is at least some evidence, expert evidence, of Garcia's negligence. *Id.* (citing *Elbaor*, 845 S.W.2d at 243).

By this, I do not mean to suggest that Garcia is, in fact, contributorily negligent. Rather, I only contend that there is some evidence, such that the matter is one left to the trier of fact to decide. The trier of fact might determine, given the circumstances, that Garcia was not negligent, that he was acting as a reasonably prudent police officer in the situation should act. But again, the question is one for the jury given the evidence.

## CONCLUSION

Because I do not believe expert testimony was required in this matter, and believe that even if it was, there was some expert testimony–albeit provided by Garcia himself–so as to place the issue of Garcia's negligence within the province of the jury. Accordingly, I dissent.

Marialyn Barnard, Justice