

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00484-CV

**BUCKSTOP ACQUISITION COMPANY, LLC**,
Appellant

v.

Cristino **CASTANEDA**, individually and d/b/a Thermo Cooling Insulation,
Appellee

From the 38th Judicial District Court, Real County, Texas
Trial Court No. 2016-3309-DC
Honorable Spencer W. Brown, Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:   Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  June 13, 2018

AFFIRMED

At issue in this appeal is whether expert testimony was necessary to establish the standard of care applicable to the installation of spray polyurethane foam ("SPF") during renovation of a commercial building. Because we hold that expert testimony regarding the standard of care was needed, we affirm the trial court's summary judgment in favor of Appellee Cristino Castaneda, individually and d/b/a Thermo Cooling Insulation ("Castaneda").

**BACKGROUND**

In 2014, Appellant Buckstop Acquisition Company ("Buckstop") acquired a two-acre tract of land in Leakey, Texas, and decided to renovate the existing convenience store and restaurant located on the property. On February 9, 2015, during the renovation process, the convenience store and restaurant were destroyed by fire. The fire began when insulation in the building was ignited by hot slag during the welding process. Although the welder attempted to extinguish the fire, it spread quickly throughout the building. The building was a complete loss.

Buckstop was insured by Scottsdale Insurance Company ("Scottsdale") and was paid a sum in settlement of its insurance claim. Scottsdale then brought a subrogation claim against Castaneda. Castaneda, a subcontractor, was hired by the general contractor of the renovation project to install SPF. Castaneda completed his work in one day and was paid $10,000 for the job. Eight days after Castaneda installed the foam, the fire started as a result of the welder working close to the SPF. Scottsdale alleged Castaneda was negligent in failing to use reasonable care in the insulation work because he did not use a fire retardant in the SPF and did not apply a thermal barrier to the exposed surface of the foam. Buckstop then intervened in the lawsuit, seeking recovery of its uninsured losses from Castaneda. Like Scottsdale, Buckstop alleged Castaneda was negligent by failing to use a fire retardant in the insulation and by failing to apply a thermal barrier to the exposed surface of the foam.

About nine months after Buckstop filed its petition in intervention, Castaneda filed no-evidence motions for summary judgment against Buckstop and Scottsdale. In both motions, Castaneda argued neither Buckstop nor Scottsdale had evidence proving the elements of their negligence causes of action. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) ("The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty."). Specifically, Castaneda argued neither

Buckstop nor Scottsdale had provided expert testimony regarding the applicable standard of care and any breach of the standard of care. Scottsdale filed a response to the no-evidence motion for summary judgment and attached evidence in support, including an affidavit and expert report by Mark Sutherland, an electrical engineer and fire investigator; and excerpts of testimony from Castaneda's deposition. Buckstop then filed its own response and adopted by reference Scottsdale's response, including the evidence attached. Buckstop then attached its own evidence to its response. The trial court granted both no-evidence motions for summary judgment filed by Castaneda. Buckstop filed a notice of appeal. Scottsdale did not appeal.

## NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

A no-evidence motion for summary judgment "is essentially a motion for a pretrial directed verdict." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *see* TEX. R. CIV. P. 166(a)(i). "Once such a motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion." *Mack*, 206 S.W.3d at 582. "We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.*

## DISCUSSION

On appeal, Buckstop argues the trial court erred in granting Castaneda's no-evidence summary judgment against it because the evidence attached to its response and the evidence it adopted by reference from Scottdale's response provided sufficient evidence to support each element of its negligence cause of action. In his appellee's brief, Castaneda narrows the issue for appeal: "[F]or purposes of this appeal only, Castaneda does not dispute that the affidavits raise fact issues that: (1) the absence of a flame retardant in the SPF or a complete thermal barrier contributed

to cause the fire to spread; and (2) Buckstop sustained damages as a result of the fire." By conceding, for purposes of this appeal, proximate cause and damages, Castaneda has narrowed the issue on appeal to whether he breached any duty owed to Buckstop. According to Castaneda, Buckstop's negligence claim required expert testimony to demonstrate that the standard of care applicable to an insulation installer required Castaneda to apply a fire retardant to the insulation and to install a thermal barrier. Castaneda emphasizes that Buckstop produced no expert testimony establishing the standard of care applicable to Castaneda or his alleged breach of that standard of care. In response, Buckstop argues expert testimony is not needed to establish the standard of care in this case, and even if it were, the expert reports produced by Buckstop were sufficient evidence.

The determination of whether expert testimony is needed to establish the standard of care under the facts of this case is a question of law. *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004). Thus, we "review de novo the trial court's determination that expert testimony was necessary in this case to establish the applicable standard of care." *Id.* at 90. "Expert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of the layman." *Id*. "In determining whether expert testimony is necessary to establish negligence Texas courts have considered whether the conduct at issue involves the use of specialized equipment and techniques unfamiliar to the ordinary person." *Id.* at 91.

Applying this standard, in *FFE Transportation Services, Inc. v. Fulgham*, the supreme court considered whether expert testimony was needed to establish the standard of care involving breach of the defendant's duty to inspect its refrigerated trailers. *Id.* at 86. Three hours after the plaintiff, a long-haul truck driver, picked up the defendant's refrigerated trailer, "the trailer's upper coupler assembly broke loose from the trailer, causing the trailer to separate from the tractor and overturn." *Id.* The resulting accident injured the plaintiff. *Id.* In considering whether the conduct involved the use of specialized equipment and techniques unfamiliar to the ordinary person, the

supreme court reasoned the "upper coupler assembly, kingpin, and base rail of a refrigerated trailer are specialized equipment, and the proper inspection and maintenance of those parts involve techniques unfamiliar to the ordinary person." *Id.* at 91. The court explained "[f]ew people not involved in the trucking industry are familiar with refrigerated trailers, the mechanisms for connecting them to tractors, and the frequency and type of inspection and maintenance they require." *Id.* "While the ordinary person may be able to detect whether a visible bolt is loose or rusty, determining when that looseness or rust is sufficient to create a danger requires specialized knowledge." *Id.* "Therefore, the layman does not know what the standard of care is for the inspection and maintenance of the upper coupler assembly, kingpin, and base rail of a refrigerated trailer." *Id.* The supreme court held "the trial court correctly determined that expert testimony was necessary to establish [the defendant]'s negligence." *Id.*

Similarly, in *VIA Metropolitan Transit v. Garcia*, 397 S.W.3d 702, 709 (Tex. App.—San Antonio 2012, pet. denied), this Court looked at whether specialized techniques unfamiliar to the ordinary person were applicable in the context of a police officer directing traffic. This Court concluded that the conduct at issue, the police officer's actions in directing traffic, involved "the use of techniques unfamiliar to the ordinary person." *Id.* "[B]ecause an ordinary person lacks the requisite authority and training to direct traffic," this Court held the police officer's "alleged negligence is not within the experience of a layman" and thus the plaintiff "was required to present expert testimony to establish the standard of care applicable to a law enforcement officer directing traffic and evidence of the breach of that standard." *Id.*

In contrast, the supreme court concluded in *Melody Home Manufacturing Co. v. Barnes*, 741 S.W.2d 349, 355 (Tex. 1987), that expert testimony was not needed to establish the standard of care. The plaintiffs bought a modular pre-fabricated home from the defendant, Melody Home. *Id.* at 351. After they moved in, "they continually experienced puddles and dampness inside the

house." *Id.* "Over two years after moving in, they discovered that a sink was not connected to the drain in one of the interior walls." *Id.* They sued Melody Home under the Deceptive Trade Practices-Consumer Protection Act, alleging Melody Home had breached its implied warranty. *Id.* In considering whether expert testimony was needed to establish the standard of care, the supreme court reasoned that "[i]n this case, the breach of the implied warranty was plainly within the common knowledge of laymen and did not require expert testimony." *Id.* at 355. "The jurors had sufficient knowledge to find that the failure to connect a washing machine drain would not be considered good and workmanlike by those capable of judging repair work." *Id.*

Buckstop argues the facts of this case are similar to *Melody Home* and the jury will not be asked to determine questions outside its knowledge:

> [T]he jury will not determine the negligence issue based upon knowledge of the chemistry of spray polyurethane foam, or the chemistry of fire retardants, or thermal barriers and fire dynamics. We already know what fire retardant is, and what it does. We already know what a thermal barrier is, and what it does. We already know that neither was applied nor installed; it is not a case of whether they were properly or correctly applied. We do not ask that the jury be instructed that the failure to apply fire retardant or install a thermal barrier constitutes negligence. Buckstop only asks that a duty issue such as the one quoted in *Melody Home* be employed, and the jury be asked to determine whether [Castaneda]'s acts or omissions constituted negligence under that standard. Plainly, a Texas jury can do that. . . . The essential facts from which [Castaneda]'s duties arose, and upon which its negligence or lack of it will be judged, are easily comprehensible and, in fact, are already known. Nothing about it is over the heads of jurors of ordinary intelligence and experience.

We disagree with this reasoning by Buckstop. The issue is not whether the jury can understand what a fire retardant is or what a thermal barrier is. The issue is not whether a fire retardant or thermal barrier was applied or installed. The issue is not whether the jury could understand the essential facts of the case. The issue is what standard of care is applicable to Castaneda as an installer of SPF in a commercial building. That is, must a reasonably, prudent installer of SPF always apply fire retardant to SPF and place a thermal barrier? Is the failure to do so a breach of

the standard of care applicable to installers of SPF in commercial buildings? It is the answer to these questions that must be within the common knowledge of the layman before expert testimony would be considered unnecessary. We conclude they are not within the layman's knowledge. As noted by Castaneda, "the selection and installation of insulation, its potential flammability, applicable industry standards, the content and applicability of building codes, and the existence of responsibility for adding a thermal barrier are all matters beyond jurors' common understanding." Thus, we hold that expert testimony was necessary in this case to establish the standard of care applicable to Castaneda and any breach of that standard.

Buckstop argues that it did provide expert testimony of the standard of care and breach in the form of Mark Sutherland's affidavit and expert report. Buckstop first points to the following statements from the report's "Cause" section:

> The cause of the fire is not disputed and was the result of a welder igniting the SPF. The issue is how quickly the fire spread and why it could not be extinguished when it was discovered as a very small fire. As we found from the UL 94V testing, there was no fire retardant in the foam and no thermal barrier applied to the exposed surface of the foam. SPF's are required to include a flame retardant to limit flame spread if accidently ignited and a thermal barrier is required to delay SPF's involvement in a fire.

Buckstop next points to statements in the "Fault" section of the report:

> The International Building Code states that a thermal barrier or ignition barrier is required on all spray foam installation used in residential and commercial structures. Generally, a code-prescribed thermal barrier (1/2-inch thickness gypsum wall board or equivalent) is required (2012 IBC § 2603.4).

Finally, Buckstop quotes the following from the "Summary" section of the report:

> Once the front wall was ignited and burning, the fire then quickly spread up the wall to the exposed SPF on the ceiling, which quickly spread the fire throughout the structure. The SPF should have had a 15 minute thermal barrier installed as required by the IBC. This would have allowed the fire to burn itself out or allowed the fire department to get it under control.

Buckstop thus argues these excerpts from Sutherland's report are sufficient evidence of the standard of care for an installer of SPF. According to Buckstop, Sutherland's report is evidence SPF should not be installed without fire retardant or a thermal barrier. Buckstop then makes the inference that because Castaneda installed SPF, he was required to use fire retardant with the SPF and create a thermal barrier.

However, although Sutherland's report cites the International Building Code for the proposition that a thermal barrier is required on all SPF used in residential and commercial structures, there is no evidence that the International Building Code was applicable to the renovation project in Leakey, Texas, or that the standard of care required an SPF installer to follow the International Building Code. Moreover, nothing in Sutherland's report states that installation of a thermal barrier is the responsibility of the SPF installer or that an SPF installer violates the applicable standard of care by not installing a thermal barrier in addition to installing SPF. It is undisputed that the general contractor in this case hired Castaneda solely for the purpose of blowing SPF in the walls and ceilings of the renovation project. It is also undisputed that the general contractor did not request that Castaneda apply flame retardant or that he install a thermal barrier.[1] Sutherland's report is simply not evidence that the standard of care in this case required Castaneda, as the SPF installer, to install a thermal barrier.

With regard to the fire retardant, Castaneda testified in his deposition that sometimes he applies a fire retardant when the builder hiring him asks him to do so. Castaneda testified he does not apply a fire retardant when the builder does not ask him to do so. And, on most jobs, he does not apply fire retardant. Castaneda testified the fire retardant is sold separately from the SPF.

---

[1]In his no-evidence motion for summary judgment, Castaneda argued that the general contractor hired another subcontractor to install the thermal barrier. At the summary judgment hearing, Castaneda's counsel again argued to the trial court that the general contractor hired another subcontractor to install the thermal barrier. However, evidence of this fact is not contained within the summary judgment record.

Castaneda explained application of the fire retardant is a separate process, involving a separate machine, and is applied after the SPF. Buckstop argues the standard of care requires an installer of SPF to apply fire retardant to SPF and relies on this statement from Sutherland's report: "SPF's are required to include a flame retardant to limit flame spread if accidently ignited and a thermal barrier is required to delay SPF's involvement in a fire." This statement, however, is conclusory. The report does not state the origin of any such requirement. Further, the report does not state whose duty it is to fulfill the requirement. *See Gonzales v. Shing Wai Brass & Metal Wares Factory, Ltd.*, 190 S.W.3d 742, 746 (Tex. App.—San Antonio 2005, no pet.) (explaining that affidavits supporting and opposing a motion for summary judgment "must set forth facts, not merely conclusions" and that a "conclusory statement is one that does not provide the underlying facts to support the conclusion and is insufficient to create a question of fact to defeat summary judgment"). Indeed, the following statement in the report's "Summary" section suggests that any such duty lies with the manufacturer, not an installer:

> Once the SPF ignited, it should have burned very slowly and formed a charred exterior limiting the flame spread. According to the manufactures [sic] website, they use the ASTM E84 flame spread test to classify their SPF as a Class I material, with a flame spread of less than 25, which is considered acceptable. However, this test is flawed when used on SPF and does not actually show the true potential for flame spread. The UL 94 test is a more accurate test for flame spread for SPF and this test showed that no flame retardants were present in the material.

Thus, with respect to the lack of fire retardant in the SPF, Sutherland's report finds fault with the SPF manufacturer, not Castaneda. Sutherland's report is not evidence that the standard of care required Castaneda to apply fire retardant to the SPF after it was installed.

Finally, Buckstop points to Castaneda's own deposition testimony that SPF "should have a retardant" as evidence that he breached the standard of care. In context, Castaneda testified as follows:

Q:      You've been applying this foam now for at least 13 years with the company you own, correct?
[Objection, form]
A:      Different – not the same one but different chemicals.
Q:      Okay. Have you ever had a fire occur before regarding a foam that you were spraying?
A:      No.
Q:      Do you understand what I mean when I'm talking about the foam being fire retardant?
A:      Well, I don't know, but I think it should have a retardant.

* * * * *

Q:      And you don't apply any fire retardant to the foam on your own; do you?
A:      When the builder asks for it.
Q:      Has a builder asked for it in the past?
A:      Yes.
Q:      What fire retardant do you apply to the foam?
[Objection, form]
A:      I don't know. It's just a retardant.
Q:      And is that sprayed on before or after, or is it mixed with the foam?
A:      After.
Q:      Do you use a different machine to apply the retardant?
A:      Yes, it's different.
Q:      And where do you get the fire retardant?
A:      From where you buy the same chemical.
Q:      So, the company sells the foam separately from the fire retardant; is that what you're saying?
A:      Yes.
Q:      And did your contract with the builder require that you apply fire retardant?
[Objection, form]
A:      No.
Q:      Why do you – why is fire retardant applied to buildings?
[Objection, form]
A:      I don't know.
Q:      What is the name of the fire retardant?
A:      Block Fire, something like that.
Q:      And how often do you apply fire retardant to the foam in your work?
A:      When the builder or the homeowner asks for it. . . .
Q:      Do you apply the fire retardant on most jobs that you do?
A:      No.

Read in context, Castaneda did not testify the standard of care required him to apply fire retardant to the SPF. He testified he applied fire retardant when asked to by the builder or homeowner. According to Castaneda, most of the time, he did not apply the fire retardant. However, he would

apply the retardant if it were him. This is not evidence of a standard of care that applies to SPF installers.

## CONCLUSION

We conclude that expert testimony was necessary to establish the applicable standard of care in this case. Because Buckstop presented no expert testimony establishing either the standard of care applicable to Castaneda or his violation of that standard, the trial court did not err in granting Castaneda's no-evidence motion for summary judgment. We therefore affirm the judgment of the trial court.

Karen Angelini, Justice